**EL CID, LTD., Plaintiff,**

v.

**The NEW JERSEY ZINC COMPANY, Gulf & Western Industries, Inc., Watts, Griffis and McQuat, Ltd., Camino Gold Mines, Ltd., Condor Mining, Inc., Richard W. Hogeland and David M. Koogler, Defendants.**

No. 76 Civ. 1388.

United States District Court, S. D. New York.

Aug. 4, 1977.

Malcolm H. Bell, Norwalk, Conn., for plaintiff.

Satterlee & Stephens, New York City, for defendants.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Presently before the court is a motion by the defendants Watts, Griffis and McQuat Limited and Camino Gold Mines Limited to dismiss this action as against them on the grounds that this Court lacks *in personam* jurisdiction.[1] The action involves claims that seven defendants conspired to wrongfully deprive the plaintiff, El Cid Limited, of certain Bolivian gold mine concessions known as the "Bolgol concessions" in violation of the Sherman Act, 15 U.S.C. § 1 and the Wilson Tariff Act, 15 U.S.C. § 8, and that they tortiously interfered with the plaintiff's advantageous business and contractual relationships.

The plaintiff, El Cid Limited ("El Cid"), is a Cayman Island corporation with its offices in Costa Rica. The defendants are as follows:

(1) Gulf and Western Industries, Inc. ("G & W"), a Delaware corporation with its principal place of business in New York.

(2) The New Jersey Zinc Company ("New Jersey Zinc"), a Delaware corporation with its principal place of business in Pennsylvania. New Jersey Zinc is a wholly owned subsidiary of G & W.

(3) Richard Hogeland, the president of New Jersey Zinc, a citizen of Pennsylvania.

(4) David M. Koogler, the executive vice president of New Jersey Zinc, a citizen of Pennsylvania.

(5) Condor Mining, Inc. ("Condor"), a New York corporation with its principal place of business in New York.

(6) Watts, Griffis and McQuat Limited ("Watts-Griffis"), a Canadian corporation consisting of approximately ninety employees, with its principal place of business in Canada. Watts-Griffis is in the business of organizing and managing mineral exploration programs and supplying consulting geologists and mining engineers for these and other exploration programs.

(7) Camino Gold Mines Limited ("Camino"), a Canadian corporation with its principal place of business in Canada. Camino was organized by Watts-Griffis in September, 1973. Its purpose was, and still is, to acquire mineral rights in the Tipuani Valley of Bolivia. (Griffis deposition, pp. 15–16). Watts-Griffis and Camino have a close business relationship. The two corporations have the same address and have interlocking officers and directors. Arthur Griffis is the president of Watts-Griffis and a director and president of Camino. James Bates is a director of Watts-Griffis and a director and vice-president of Camino. James McQuat is also a director of both Watts-Griffis and Camino. Camino has no North American employees and has re-

1. The defendants moved in the alternative for dismissal on forum non conveniens grounds, arguing that Bolivia was the more convenient forum. We deny this motion as frivolous since the plaintiffs could not institute a Sherman Act or a comparable suit in Bolivia.

tained Watts-Griffis to manage its affairs. Watts-Griffis' employees including Bates and Griffis perform all necessary duties for the day to day operations of Camino in North America.[2] These employees are paid by Watts-Griffis and are contractually prohibited from receiving compensation from anyone other than Watts-Griffis. Watts-Griffis bills Camino for its employees' services performed on behalf of Camino. Watts-Griffis and Camino maintain separate books of account, separate corporate records and do not comingle their funds. However, Camino has never paid Watts-Griffis for the services of Watts-Griffis employees. (Griffis deposition p. 144) Watts-Griffis now owns approximately one quarter of the stock of Camino;[3] Gulf & Western International Holding Company, Inc. (not the defendant G & W referred to *supra*) owns approximately twenty-eight percent (28%) of Camino's stock;[4] the remainder is owned by various small shareholders.

The resolution of the issue whether this court has *in personam* jurisdiction over Watts-Griffis and over Camino requires a detailed examination of the underlying facts which comprise the alleged conspiracy. Since jurisdiction is here challenged in a pre-trial motion to dismiss and the facts necessary to support jurisdiction are comingled with the ultimate question of liability, the plaintiff is only required to establish prima facie sufficient contacts to bring the defendants within the purview of the New York long-arm statute, N.Y. C.P.L.R. § 302.[5] *United States v. Montreal Trust Co.* (2d Cir. 1966), 358 F.2d 239, 242, *cert. denied* (1966), 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440; *Ghazoul v. International Management Services, Inc.* (S.D.N.Y.1975), 398 F.Supp. 307, 309–10. Therefore, the evidence adduced during discovery[6] is viewed here in the light most favorable to the plaintiff.

The dispute in this case centers around certain mining concessions known as the "Bolgol concessions", which are located in the Tipuani Valley of Bolivia. In October, 1973 Gaenzel Gold Mines & Co., Ltd., a Bolivian corporation acting through Helmut Gaenzel, its sole stockholder, purchased the Bolgol concessions.

At some unknown time prior to the events relevant to this action, the defendant Condor also acquired certain mining concessions in the Tipuani Valley. Some of Condor's concessions overlapped with those of Gaenzel.

On October 22, 1973 Condor entered into a contract with Camino which granted

2. Griffis spends about 25% of his time on behalf of Camino, and Bates spends less than half his time on behalf of Camino. It is unclear how many other Watts-Griffis employees perform duties for Camino.

3. Watts-Griffis earlier owned 43.8% of Camino. (Notice of Cross-Motion, Exh. N, p. 9)

4. The plaintiff intends to amend its complaint for the purpose of adding Gulf & Western International Holding Co., Inc. as an eighth defendant.

5. N.Y. C.P.L.R. § 302 (McKinney 1972) provides, in pertinent part:
   "(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:
   1. transacts any business within the state; or
   2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or . . ."

Since the plaintiff has established *in personam* jurisdiction under N.Y. C.P.L.R. § 302(a)(1), it is unnecessary for us to reach the issue whether jurisdiction may also be exercised pursuant to N.Y. C.P.L.R. § 302(a)(2).

The plaintiff also contends that this court has personal jurisdiction over the defendants pursuant to the Clayton Act, 15 U.S.C. § 22 (1970). However, since we find *in personam* jurisdiction under the New York long-arm statute, we do not reach the question whether the defendants transacted sufficient business in New York to subject them to the jurisdiction of this court under the Clayton Act. In any event, we could not answer that question without allowing further discovery since the defendants refused to answer deposition questions regarding activities in New York which did not directly relate to this cause of action.

6. Judge Goettel issued an order which allowed discovery limited to the jurisdictional issues here presented.

Camino the option to acquire a seventy-five percent (75%) beneficial interest in Condor's Bolivian property provided certain conditions were met. This contract also provided that Watts-Griffis would be retained to manage the property. (Exhibit I). Bates and Griffis stated they executed this contract in New York "on behalf of" Camino.[7]

The plaintiff alleges that in March, 1974 Gaenzel and his company assigned to El Cid's predecessors all of their right, title and interest to the Bolgol concessions.

Prior to the commencement of this action, the defendant Condor asserted a claim in the Bolivian courts to the Bolgol concessions. A final judgment entered on May 26, 1975 held that Gaenzel and his company had title to these concessions.[8] Gaenzel reconveyed title to the Bolgol concessions to El Cid on June 25, 1975.

For purposes of this motion, we find that the defendants participated in the following New York activities:

(a) On June 18, 1975, six days prior to Gaenzel's reconveyance to El Cid, Griffis attended a New York meeting with Gaenzel, representatives of Condor and counsel for New Jersey Zinc. This meeting involved negotiations to obtain Gaenzel's rights to the Bolgol concessions.[9]

(b) Bates attended two meetings in New York with St. Joseph's Lead Co. regarding the technical development of the "Tipuani Valley project."[10] These meetings occurred in mid-1975 and March, 1976.

(c) Bates and/or Griffis attended three meetings in New York regarding financing of the Tipuani Valley project. These meetings occurred in September, 1975 (with New Jersey Zinc and Charter House International Bank), in October, 1975 (with New Jersey Zinc and the First National City Bank), and on March 5, 1976 (with the defendant Hogeland and other New Jersey Zinc representatives).

(d) Griffis and/or Bates attended three meetings in New York with Condor to review the entire Tipuani project. These meetings occurred in August, 1975, early March, 1976, and on March 26, 1976.

(e) On December 10, 1975, Camino entered into a contract with Gulf & Western International Holding Co., Inc. ("G &

---

7. Although this contract was executed before El Cid or its predecessor had acquired any rights to the Bolgol concessions, and thus before the commencement of the alleged conspiracy, the contract was supplemented in New York on June 18, 1975 after they had allegedly acquired rights. (See p. 847, *infra*.) The term of this contract which provided for Watts-Griffis' management of the Bolivian property has never been altered and the contract is still in force.

8. The parties did not submit a copy of the Bolivian judgment, nor did they discuss whether El Cid was involved in that action or whether the judgment affected the alleged March, 1974 assignment from Gaenzel to El Cid's predecessors.

9. On July 15, 1975, in an unknown location, an agreement embodying the understandings arrived at at this meeting was executed between Gaenzel and Camino. (Exhibit Q, G. 93–96). Pursuant to this agreement, Gaenzel agreed to convey to Camino his interest in the Bolgol concessions. The agreement contained the following handwritten modification, which the plaintiff alleges referred to El Cid:

This Agreement shall become effective on August 1, 1975, provided certain parties cannot satisfy their obligations to Gaenzel as set forth in agreements between those certain parties and Gaenzel.

The plaintiff further alleges that the defendants took certain actions outside of New York in an attempt to prevent El Cid from satisfying the above-mentioned obligations. These actions included threats of bringing endless litigation unless El Cid sold its Bolgol rights to New Jersey Zinc, and communications to El Cid's financial backers to the effect that the property was a bad investment because it would be tied up in court forever. (Plaintiff's ans. to interr. 16(c), (d).)

Needless to say, we do not pass upon the merits of these or any other allegations made by plaintiff.

10. Bates testified he was not certain whether the Tipuani Valley project included the Bolgol concessions because he could not recall the boundaries. Questions regarding specific tracts of land which comprised the Bolgol concessions propounded to jog Bates' memory were blocked by defense counsel. (Bates' deposition p. 28) However, Griffis and a representative of Condor both indicated the Bolgol concessions were a part of the Tipuani Valley project discussions. (Griffis deposition p. 46 [The Colorado tract referred to therein is a part of the Bolgol.])

W Holding Co.") which gave the latter the option to acquire a 49.77% interest in Camino's Tipuani Valley property. The contract also provided for Watts-Griffis to prepare a formal report on the results of exploration work on this property. (Exh. to Hoey Aff., p. 2) The defendant has clearly refuted the plaintiff's allegation that the contract was executed in New York. However, we find that the contract embodied understandings arrived at in precontractual negotiations which had occurred in New York on December 1, 1976, and that therefore the transaction as a whole was closely connected to New York. Furthermore, this contract provided for arbitration in New York and subsequent to the commencement of this action, Camino instituted proceedings to compel arbitration in the New York Supreme Court.

(f) Between June 18, 1975 and the time that this action was instituted, Griffis and Bates spoke at least eleven (11) times to representatives of Condor who were in New York. These conversations concerned the Bolgol concessions and were initiated both by Condor and by Griffis and Bates.

## DISCUSSION

The plaintiff correctly contends that by virtue of the incorporative provisions of Federal Rules of Civil Procedure 4(e), these activities subject the defendants to this court's jurisdiction under the New York long-arm statute, N.Y. C.P.L.R. § 302(a)(1) (McKinney 1972) since the defendants "transact business" within New York.[11] In the enactment of its long-arm statute, New York chose not to exercise the full *in personam* jurisdiction constitutionally permissible under *International Shoe Co. v. State of Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 and *Hanson v. Denckla* (1958), 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. Rather, in addition to the requisite minimum contacts, New York requires that

the cause of action arise from these contacts. *United States v. Montreal Trust Co.* (1966), 358 F.2d 239, 242, *cert. denied* (1966), 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440. See *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.* (1965), 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, *cert. denied sub nom., Estwing Manufacturing Co., Inc. v. Singer* (1965), 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158.

There is no mechanical formula that can be used to determine whether the type of activity conducted within New York is sufficient to constitute "transacting business" under C.P.L.R. § 302(a)(1); rather, the facts of each case must be examined to determine whether "looking at the totality of the defendant's activities within the forum", the defendant has engaged in purposeful activity by which he has invoked the benefits and protections of New York law. *Sterling National Bank & Trust Co. of New York v. Fidelity Mortgage Investors* (2d Cir. 1975), 510 F.2d 870, 873; *Galgay v. Bulletin Co., Inc.* (2d Cir. 1974), 504 F.2d 1062, 1064. In the case *sub judice* the plaintiff has established that Bates and Griffis availed themselves of the benefits and protections of New York law by participating in at least ten meetings in New York. These activities were undertaken to promote the business ventures of Camino with regard to the Tipuani Valley project, and are more than sufficient to meet the test of purposeful activity within New York. Cf. *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra; Northland Paper Co. v. Mohawk Tablet Co.* (S.D.N.Y.1967), 271 F.Supp. 763, 768–9.

A more difficult question is whether these transactions gave rise to the plaintiff's cause of action. It is undisputed that all ten of the above mentioned New York activities concerned the development of the Tipuani Valley. Four of the meetings[12] clearly concerned the acquisition or development of the Bolgol concessions. There is

11. *See* note 4, *supra.*

12. These four meetings are the June 18, 1975 meeting, the August, 1975 meeting, the First

National City Bank meeting in September or October, 1975, and the March 26, 1976 meeting.

**850**

some dispute whether the remaining six meetings concerned the Bolgol concessions or Condor's other Tipuani property,[13] but viewing the evidence at this pre-trial stage in the light most favorable to the plaintiff, we find that these meetings concerned the Bolgol concessions. Furthermore, since these acts occurred after the Bolivian judgment, and all but one occurred after the Gaenzel reconveyance to El Cid, the claim that these meetings were in furtherance of the alleged conspiracy to wrongfully deprive El Cid of the Bolgol concessions is colorable.

We conclude, for purposes of this motion, that the plaintiff has established sufficient facts to constitute a prima facie showing that the cause of action arose from the defendant's New York activities. Whether the plaintiff will be able to sustain its burden of proof by a preponderance of the evidence at trial is an entirely different question which is not now before us. *United ed States v. Montreal Trust Co., supra.*

Finally, the defendant Watts-Griffis contends that even if Camino is subject to this court's *in personam* jurisdiction, Watts-Griffis is not. This contention is based upon the defendant's assertion that all of Bates' and Griffis' New York activities were on behalf of Camino. We disagree and hold that for purposes of personal jurisdiction, Bates and Griffis were agents of both Watts-Griffis and Camino while present in New York.

In the first place, although Bates and Griffis stated that when they were in New York they acted solely in their capacities as officers of Camino, we find that on at least two of these occasions they solicited and obtained further business for Watts-Griffis pertaining to the Tipuani project. Thus, they arranged in New York the inclusion of a contractual provision that Watts-Griffis

would be retained to manage any Tipuani properties Camino might acquire from Condor. See p. 847, *supra*, and n. 7. In addition, they arranged in New York for Watts-Griffis to be retained to prepare a formal report on the results of exploration work on the Bolivian properties. See p. 848, *supra*. From the foregoing we conclude that Bates and Griffis while in New York acted as agents at times for Camino and at times for Watts-Griffis.[14]

Accordingly, the defendants' motions to dismiss for lack of jurisdiction are denied without prejudice to renewal at trial. Their motions for fees and costs are also denied.

SO ORDERED.

**13.** *See* note 9, *supra.*

**14.** In view of our disposition, we need not reach the question whether when Bates and Griffis were acting for Camino, they were also acting as agents for Watts-Griffis. See generally 2 MECHUM, AGENCY (2d ed. 1959) § 1860–62. See also *Galgay v. Bulletin Co., Inc.* (2d Cir. 1974), 504 F.2d 1062, 1064–5 and

*Orient Mid-East Lines, Inc. v. Albert E. Bowen, Inc.* (S.D.N.Y.1969), 297 F.Supp. 1149, 1152 n. 5. (The standard used to determine "agency" for purposes of establishing personal jurisdiction under New York Law is different from that used to determine agency for purposes of establishing liability for a tort.)