**LAKER AIRWAYS LIMITED, Plaintiff,**

v.

**PAN AMERICAN WORLD AIRWAYS,
et al., Defendants.**

Civ. A. No. 82–3362.

United States District Court,
District of Columbia.

May 3, 1983.

Robert M. Beckman, Beckman & Farmer, Carl W. Schwarz, Metzger, Shadyac & Schwarz, Washington, D.C., for plaintiff.

Fred D. Turnage, Cleary, Gottlieb, Steen & Hamilton, Washington, D.C., for Pan American World Airways.

Leonard N. Bebchick, Douglas E. Rosenthal, Sutherland, Asbill & Brennan, Washington, D.C., for British Caledonian Airways.

James J. Murphy, Bryan, Cave, McPheeters & McRoberts, Washington, D.C., for McDonnell Douglas Corp. and McDonnell Douglas Finance Corp.

George T. Manning, Chadbourne, Parke, Whiteside & Wolff, Washington, D.C., for Trans World Airlines.

Lloyd Cutler, Wilmer, Cutler & Pickering, Laurence A. Short, Short, Klein & Karas, Washington, D.C., for Lufthansa German Airlines, Swissair and Swiss Air Transport Co. Ltd.

Sidney S. Rosdeitcher, Paul, Weiss, Rifkind, Wharton & Garrison, Washington, D.C., William C. Clarke, Barrett, Smith, Schapiro, Simon & Armstrong, New York City, for British Airways Bd.

Bert Rein, P.C., Kirkland & Ellis, Washington, D.C., for Intern. Air Transport Ass'n.

## OPINION

HAROLD H. GREENE, District Judge.

On March 9, 1983, the Court granted plaintiff's motion for preliminary injunction restraining defendants from seeking to interfere with the jurisdiction of this Court by means of lawsuits brought in a British court.[1] The Court now considers plaintiff's motion for partial summary judgment on *forum non conveniens* grounds.

### I

■ Defendants argue that plaintiff has chosen the wrong vehicle for bringing the *forum non conveniens* issue before the Court. More specifically, it is said that summary judgment under Rule 56 of the Federal Rules of Civil Procedure is not the proper method for raising this question. While there is a split of authority regarding the availability of Rule 56 for this matter, the better approach, according to Wright & Miller[2] is to allow the Rule to be utilized for the grant of partial summary judgment with respect to an affirmative defense. The Court agrees with the Wright & Miller analysis, particularly in the circumstances of this case. As the authors of that text state,

> [t]he fact that the order is directed at defensive matter should not prevent it being issued inasmuch as a partial adjudication would serve a useful purpose and remove any prejudice that plaintiff otherwise might suffer if the issue were presented to the jury.

Wright & Miller at 463.

Defendants' procedural argument amounts more broadly to a claim that there are no means[3] by which a plaintiff may raise the *forum non conveniens* question, and concomitantly, that it is entirely up to the defendants when the issue may be decided. That contention must be rejected.

All the defendants list *forum non conveniens* in their answers to the complaint as an affirmative defense.[4] Thus, it is not necessary to determine whether a plaintiff may raise the issue on his own if the defendant has given no indication that he is or may be relying on this defense. The issue is already before the Court, and it is merely a question whether in that posture the plain-

---

1. The various proceedings here and in the British High Court of Justice, Queen's Bench Division, which gave rise to that injunction are described in an opinion this Court issued on March 9.

2. 10A C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d* § 2737 at 462–63 (1983).

3. Defendants also contend that, while perhaps under some circumstances Rule 12(f) might be appropriate, this plaintiff may not, for various reasons, rely on that Rule either.

4. Eighth Affirmative Defense of Pan American; Fourth Affirmative Defense of TWA; Sixteenth Affirmative Defense of British Airways; Third Affirmative Defense of Swissair; Third Affirmative Defense of Lufthansa; Seventh Affirmative Defense of McDonnell Douglas and McDonnell Douglas Finance Corporation; and Fifth Affirmative Defense of British Caledonian.

tiff may bring it to a head by filing a motion.

Defendants have pointed to neither law nor policy reasons why they should be held to be in absolute control of timing with regard to this matter, and there would clearly be no basis for any such conclusion. If an action is to be dismissed or transferred elsewhere on *forum non conveniens* grounds, that should obviously be done before the Court has expended time and effort which might subsequently turn out to have been wasted. To wait until the defendants may be prepared, for their own tactical reasons, to raise the issue on their own (p. 814 *infra*) or, as some defendants have suggested,[5] to delay until detailed evidence in support of and in opposition to plaintiff's substantive allegations has been amassed (pp. 815–816 *infra*), would be wrong and contrary to the spirit of the rules of procedure. See Rule 1, Fed.R.Civ.P., which directs the courts to construe the Rules "to secure the just, speedy and inexpensive determination of every action." [6]

## II

Much of the discussion in the Court's March 9, 1983 Opinion granting plaintiff's motion for preliminary injunction is pertinent here. Briefly, the complaint alleges that the defendants, who in the main are American and foreign air carriers,[7] engaged in a scheme to destroy plaintiff's low cost air service on the transatlantic routes between the United States and Europe. The scheme was allegedly perfected in part through the medium of the International Air Transport Association, including through IATA meetings in Florida and in Switzerland.

When a court considers the issue of *forum non conveniens,* the plaintiff's choice of forum is, of course, given significant weight and should rarely be disturbed. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Pain v. United Technologies Corp.,* 637 F.2d 775, 783 (D.C.Cir.1980).[8] In view of that general principle, the burden is on those who challenge plaintiff's choice to demonstrate that some other forum is more convenient.

Defendants have in the main concentrated on the technical grounds disposed of *supra,*[9] and it is therefore somewhat difficult to determine on what substantive basis they oppose plaintiff's choice of forum. As best as can be determined, however, the defendants contend that, since most of the defendants are airlines anchored in Europe,[10] it may be assumed that the conve-

---

**5.** *E.g.,* Lufthansa Memorandum at 18–24.

**6.** Moreover, the Court is advised that Mr. Justice Parker of the British court has expressed the wish that he would like to have the benefit of this Court's views regarding *forum non conveniens* before making his final decision in the litigation pending before him. See, *e.g.,* Transcript of hearing in the British court dated January 27, 1983, at p. 4.

**7.** McDonnell Douglas Corporation and McDonnell Douglas Finance Corporation are not air carriers but are involved in the manufacture and financing of aircraft.

**8.** Although that weight is somewhat less when the plaintiff is a foreign resident (*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981)) this does not mean, and the *Piper Aircraft* Court did not say in that case, that plaintiff's choice is not at least presumptively valid. It should also be noted that in *Piper Aircraft,* unlike here, the relationship of the action to the United States was minimal, and that the Supreme Court there did not overturn but upheld a district court's exercise of discretion. See *Pain, supra,* 637 F.2d at 785.

**9.** Defendants also urge that this Court has an obligation to await the decision of the British court because that court rather than this Court has jurisdiction. The Court has dealt with that claim in its March 9, 1983 Opinion, and no purpose would be served by repeating that discussion here. Suffice it to say that, irrespective of the nationality of the plaintiff, there is no basis, under generally accepted principles of law, for the entry of a British judgment having the purpose or effect of aborting or preempting an ongoing lawsuit here.

**10.** Four defendants (Pan American, TWA, McDonnell Douglas Corporation, and McDonnell Douglas Finance Corporation) are American, two defendants (British Airways and British Caledonian Airways) are British, and four defendants (Swissair, Lufthansa, KLM, and Sabena) are incorporated on the European continent. The latter two defendants, KLM and

nience of the witnesses would be served and the documents would more easily be available if the Court were to defer to the British tribunal.

Defendants' argument based on the convenience of witnesses has little validity when advanced in the context of a lawsuit involving transatlantic air passenger carriers. The Court takes judicial notice of the fact that these carriers provide frequent flights between the continents; that the time involved and the expense of transporting witnesses would be minimal;[11] and that all the defendants maintain extensive business establishments in the United States, including, of course, numerous ticket offices.[12]

■ Beyond that, there is the key fact of the configuration of the alleged conspiracy. If there was a conspiracy, the United States was its hub and the various countries in Europe were its spokes. See *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Insofar as transatlantic traffic is concerned—the focus of the complaint—each of the non-American air carriers provides service between a particular European country and the United States.[13] On that basis, a court in the United States is a far more logical forum than a tribunal elsewhere, for it is here that all the strands, or spokes, come together.[14]

These considerations have direct applicability to the controversy regarding the appropriateness of this Court as a forum versus that of the British tribunal. In the final analysis, what reason is there to as-

cribe to a British court the responsibility to hear and decide this matter? Only two of the ten defendants are British. Two of the American defendants (the two McDonnell Douglas companies) are firmly located in the United States. The airlines anchored on the European continent (KLM, Sabena, Lufthansa, and Swissair) operate for purposes of this case between the United States and the Netherlands, Belgium, West Germany, and Switzerland, bypassing Great Britain.

That leaves the three British parties—the plaintiff Laker and the two defendants British Airways and British Caledonian Airways. If it be assumed that a British court is to be preferred under *forum non conveniens* principles to the forum provided by an American court simply because two defendants are British, a similar rationale would apply to courts in Belgium, Switzerland, Germany, and the Netherlands, for each of these nations contributes an air carrier to the defense table.[15] But would it make any sense to hold that Zurich, Frankfurt, Amsterdam, Brussels, or indeed London, are so clearly more logical, so clearly more convenient than a court in the United States that under *forum non conveniens* tribunals in each of these cities could oust the American court of jurisdiction, and further that they could do so even though the United States is the only place where all the alleged conspirators provided the services which are the subject of this lawsuit, and even though the plaintiff filed its action here? It is a compliment to the din of repetition and

---

Sabena, are named in a separate complaint in Civil Action No. 83–0416. Technically, they are not parties to this motion.

**11.** Plaintiff points out that many of the participants in the alleged conspiracy are or were executives of defendant airlines who have ready access to transatlantic flights (usually with free life-time first-class passes). Memorandum, p. 10.

**12.** Similar considerations apply to documents. What problems there may be with respect to obtaining evidence located in foreign countries (*Pain, supra,* 637 F.2d at 788) would equally be present with regard to a suit in the British court.

**13.** These air carriers may or may not also provide intra-Europe service, but such service is irrelevant with respect to the issues framed by the complaint.

**14.** We are not concerned here with service between Switzerland and Great Britain, or between Belgium and Germany, or between the Netherlands and Switzerland; we are concerned with service between these countries, on the one hand, and the United States, on the other.

**15.** It is difficult to believe that a distinction could properly be drawn for present purposes between the one carrier per continental country and the two that Britain is supplying.

emphasis supplied by defendants' able counsel that such an argument would even be taken seriously. As concerns, finally, the fact that Laker, the plaintiff, is a resident of Great Britain, the Court detailed on March 9, 1983, why in its view this is not an adequate basis for laying jurisdiction in Britain rather than in the United States.[16] It might be added in the *forum non conveniens* context that the plaintiff has not complained that this Court is not a convenient forum; surely the defendants cannot register that complaint for plaintiff.

For these reasons, absent specific and persuasive evidence to the contrary,[17] a court in the United States must be deemed to be a more convenient forum than a British court or any tribunal in the individual "spoke" countries. To be sure, a trial here will require the movement of witnesses and documents, but certainly the "hub" of the alleged conspiracy is a far more logical place even in that respect, for wherever the trial will be held witnesses and documents will have to be transported. In view of the way transatlantic air traffic is structured—

with one "western" terminal in the United States, and multiple "eastern" terminals in several European countries, the location and accessibility of persons and documents are far more likely to be here than there. When, finally, to these considerations is added the fact that two of the air carrier defendants and the only two non-air carrier defendants are United States corporations based in the United States, the logic of a trial in this country, when compared to any other place that has been suggested, appears overwhelming.

The defendants are telling the Court that they have decided, for their own good reasons, not to bring the *forum non conveniens* issue before this court;[18] that none of the procedural means chosen or which might be chosen by plaintiff for raising the issue is appropriate; and that in any event many facts bearing upon the issue remain to be developed and that until that has been done a court would not be justified in even considering the *forum non conveniens* question. All of these arguments suffer from a singular lack of credibility[19] if only because de-

**16.** One of the British defendants, British Airways, has apparently relaxed the emphasis it previously had placed on Laker's British nationality as the ostensible reason why a British forum is the more appropriate one. See note 18 *infra*.

**17.** As indicated above, defendants, concentrating on their purely technical defenses, have proffered no such evidence.

**18.** Defendants' current position is not entirely clear. After first claiming that the British court was the competent authority to determine their nonliability under the American antitrust laws, several of the defendants appear now to have abandoned that position. See British Airways Memorandum of April 13, 1983, and Lufthansa and Swissair Memorandum of April 27, 1983. Although defendants have refrained from a direct acknowledgement—indeed they claim that the Court must have "misunderstood" their previous claims— this change in position may imply an abandonment by these defendants of the *forum non conveniens* defense. Similarly, although British Airways, like all the defendants, began by advocating with considerable vehemence that the British court has jurisdiction on account of Laker's British nationality, it has now apparently shifted to a jurisdictional claim based on the so-called Bermuda II agreement between

Great Britain and the United States. It may, however, be observed that these theories are still being propounded only in the British court; they have not been presented to this Court for adjudication upon appropriate motion. Defendants' deliberate choice to forego litigating the issues here while the action is here pending, in favor of their litigation in a foreign tribunal, may, of course, jeopardize a possible subsequent reliance in this Court on rulings of that tribunal under such doctrines as res judicata or collateral estoppel.

**19.** One can well imagine what vigorous battles would be fought under normal circumstances among the several defendants as to the appropriate place of trial among the tribunals of the various European countries where these defendants are based. The fact that no such battles are taking place may reasonably be attributed to the fact that all of the defendants fully realize that, convenience or not, the prospect of a finding of non-liability by the British court, in view of the hostility of the British law to American antitrust principles, is sufficiently tempting that it outweighs all other considerations. Even the American defendants claim that a trial in Great Britain might be more convenient for them than one in the United States. See, *e.g.*, Memorandum of TWA, pp. 8–10; Memorandum of Pan American, pp. 15–

fendants see none of those impediments in the parallel British litigation.[20] There, in fact, defendants are marching full speed ahead, asking the tribunal to decide the very questions which they here allege to be premature.[21]

Justice is blind; but courts nevertheless do see what there is clearly to be seen. What is apparent is that the defendants, secure in the knowledge that no liability attaches to their activities under the laws of Great Britain, are seeking to have the matter decided in the British tribunal rather than in an American court.[22] But a United States court, bound to enforce the Sherman Act with respect to those who are resident in or are doing business in the United States, would not be justified in regarding defendants' desire to litigate in Britain—because they expect there to be exonerated—as a search for a more convenient forum. That is not what the doctrine of *forum non conveniens* is all about.

## III

As indicated in Part II *supra,* the Court does not consider valid in the context of this case the argument that a determination on

*forum non conveniens* may be made only on the basis of an exhaustive factual analysis and that such an analysis is not yet possible. As the Supreme Court has stated, "[s]uch detail is not necessary." *Piper Aircraft Co. v. Reyno, supra,* 454 U.S. at 258, 102 S.Ct. at 267. Nevertheless, in the interest of completeness, it is appropriate also to discuss the *forum non conveniens* issue on the basis of certain rules which require for their application little or no specific factual foundation.

In *Piper Aircraft Co. v. Reyno, supra,* the Supreme Court was confronted with a *forum non conveniens* claim asserted in the District Court for the Middle District of Pennsylvania in an action arising out of an air crash in Scotland. The Court discussed at some length the relevant private interests and public factors bearing upon the decision, ultimately holding that the district court's decision in favor of a trial in Scotland was not unreasonable, and rejecting the court of appeals' view that a plaintiff may defeat a motion to dismiss on *forum non conveniens* grounds merely by showing that the substantive law which would be applied in the alternative forum is less favorable to him than that of the present

17; Memorandum of McDonnell Douglas at 4–5.

**20.** As early as January 27, 1983, defendants told the British court that "the point of forum non conveniens . . . [is an issue which] we want . . . decided by the English court and not by the American court."

**21.** Par. 11 of the Points of Claim in No. 1983–L–No. 154—*Lufthansa, et al. v. Laker Airways Limited, et al.,* reads as follows:

11. This Honourable Court is the appropriate forum for the resolution of the dispute between the parties for reasons inter alia of:
(i) the nationality of the parties.
(ii) *the convenience to the parties and their witnesses.*
(iii) *the location of evidence.*
(iv) the speed of trial.
(v) the reduced costs of trial.
(vi) the recovery of costs by the successful party.
(vii) the interpretation of English law necessary in any event.
(viii) the absence of apportionment of liability or contribution proceedings in the United States.

(ix) the public interest in trying disputes between parties in the jurisdiction in which they arise.
(x) the public policy that proceedings involving organizations of Her Majesty's Government should be determined in this Honourable Court.
(xi) *the considerations of English public policy relevant to the enforcement of the United States anti-trust laws by the First Defendant.*
(xii) *the desire of the plaintiffs for the determination the dispute between the parties in this Honourable Court.*
(emphasis added).

**22.** Laker, too, may well have considered the effects of the American antitrust laws. It is nevertheless true that for perfectly neutral reasons the United States represents a more legitimate forum for the plaintiff than any other place, for it is doubtful that some of the participants in the alleged conspiracy could have been reached anywhere but in the United States. Moreover, had plaintiff not brought its action in the conspiracy's "hub," it would no doubt have been met with challenges to its choice far more serious and substantive than those which are being raised here.

forum. Such a rule, said the Court, would render *forum non conveniens* decisions unduly difficult of application for they would require the courts to engage preliminarily in complex exercises in comparative law. The Court then went on to state, however, that "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight; the district court may conclude that dismissal would not be in the interests of justice." 454 U.S. at 254, 102 S.Ct. at 265.[23]

As this Court observed in its March 9, 1983 Opinion, that is precisely the situation in this case. British courts could not [24] and would not [25] enforce the American antitrust laws. As for British substantive law, it fails entirely, for a number of reasons, to recognize liability for the acts which the defendants are alleged to have committed. See Opinion of March 9, 1983 at p. 29. That being so, this case is precisely within that group of cases which the Supreme Court in *Piper Aircraft* said should not be dismissed.

It is difficult to see how it could be otherwise. It would be a cruel hoax on the plaintiff to oust it from a court where its allegations, if proved, would entitle it to recovery, and to relegate it instead, in the name of "convenience," to a tribunal which, on the facts alleged, would not be justified under its own laws in entering judgment in plaintiff's favor. Moreover, what is involved here in not an obscure, technical law

in the enforcement of which the American courts could be said to have no significant interest. What is in jeopardy is the enforcement of the Sherman Act with respect to a market—travel between the United States and Europe—in which this nation has the highest interest.[26] The Sherman Act, as has often been observed, is our charter of economic liberty, comparable to the importance of the Bill of Rights with respect to personal freedom, and there is thus the highest kind of public interest in preventing the Act from being emasculated in this important area by use of an essentially logistical rule.[27] In short, the public interest factors noted by the Court of Appeals in *Pain, supra,* strongly favor plaintiff's choice of forum.

In view of these considerations, it is not surprising that it has flatly been held that the doctrine of *forum non conveniens* does not apply to antitrust actions. See *Industrial Investment Development Corporation v. Mitsui Co., Ltd.,* 671 F.2d 876 (5th Cir. 1982), *vacated on other grounds,* —— U.S. ——, 103 S.Ct. 1244, 75 L.Ed.2d 475 (1983), where the Court of Appeals for the Fifth Circuit, confronted with an appeal from a decision that Indonesia was a more convenient forum, held that in view of the venue provisions of the antitrust laws (15 U.S.C. § 22) and the fact that the Sherman Act is a quasi-penal statute, an antitrust action may never be dismissed on *forum non conveniens* grounds. See also *El Cid, Ltd. v.*

---

**23.** The Court further elaborated that where the other forum is clearly unsatisfactory, it would not be an adequate alternative, citing the example of a case where the alternative forum, Ecuador, was unsatisfactory because "there is no generally codified Ecuadorean legal remedy for the unjust enrichment and tort claims asserted." 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22.

**24.** 15 U.S.C. § 15; *General Investment Co. v. Lake Shore & Michigan Southern Ry. Co.,* 260 U.S. 261, 287, 43 S.Ct. 106, 117, 67 L.Ed. 244 (1922).

**25.** See, *e.g., British Nylon Spinners Ltd. v. Imperial Chemical Industries, Inc.,* [1953] 1 Ch. 19 (Court of Appeal, 1952).

**26.** Although it is difficult to quantify such matters, it would appear that the United States has

an economic and social interest in travel from this country to all of Europe outweighing the interest of any individual European nation in travel from it to the United States.

**27.** For that reason, too, it is hardly fair to condemn these United States courts which insist upon application of the Sherman Act to those doing business in this country as being engaged in "social jingoism." Memorandum of Lufthansa and Swissair at 13. If the jingoism label is to be used at all, it would seem more appropriately to fit those who maintain that fair results may be achieved only under British procedure, and that American courts cannot be trusted, under American law, to do justice. See March 9, 1983 Opinion at 18–20.

*New Jersey Zinc Co.,* 444 F.Supp. 845, 846 (S.D.N.Y.1977) where a *forum non conveniens* motion was denied as "frivolous since the plaintiffs could not institute a Sherman Act or comparable suit in Bolivia." The Court fully agrees with *Mitsui.*

Antitrust cases are unlike litigation involving contracts, torts, or other matters recognized in some form in every nation. A plaintiff who seeks relief by means of one of these types of actions may appropriately be sent to the courts of another nation where presumably he will be granted, at least approximately, what he is due. But the antitrust laws of the United States embody a specific congressional purpose to encourage the bringing of private claims in the American courts in order that the national policy against monopoly may be vindicated. To relegate a plaintiff to the courts of a nation which does not recognize these antitrust principles would be to defeat this congressional direction by means of a wholly inappropriate procedural device. That is an action which the Court cannot and will not take.

For these reasons, plaintiff's motion for partial summary judgment is being granted by an order issued this date.