**LAKER AIRWAYS LIMITED, Plaintiff,**

v.

**PAN AMERICAN WORLD AIRWAYS, et al., Defendants.**

**LAKER AIRWAYS LIMITED, Plaintiff,**

v.

**SABENA, BELGIAN WORLD AIRWAYS, et al., Defendants.**

**LAKER AIRWAYS LIMITED, Plaintiff,**

v.

**UNION DE TRANSPORTS AERIENS, et al., Defendants.**

Civ. A. Nos. 82–3362, 83–0416 and 83–2791.

United States District Court, District of Columbia.

Oct. 9, 1984.

Robert M. Beckman, Beckman & Farmer, Washington, D.C., for plaintiff.

Douglas E. Rosenthal, Sutherland, Asbill & Brennan, Washington, D.C., for British Caledonian Airways.

Sidney S. Rosdeitcher, Paul, Weiss, Rifkind, Wharton & Garrison, Washington, D.C., for British Airways Bd.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

This is a motion for a preliminary injunction to restrain defendants British Airways and British Caledonian Airways from engaging in foreign proceedings which would interfere with the jurisdiction of this Court. The background of the current phase of the proceeding, briefly, is as follows. This case had been pending in this Court for some months when these two defendants, among others, proceeded *ex parte* and without notice to this Court, to secure an injunction in the British High Court of Justice which for a lengthy period of time precluded Laker from taking any steps in the litigation here.[1] See generally, *Laker Airways Ltd. v. Pan American World Airways*, 559 F.Supp. 1124 (D.D.C.1983); *Laker Airways Ltd. v. Pan American World Airways*, 577 F.Supp. 348 (D.D.C. 1983); *Laker Airways v. Sabena*, 731 F.2d 909 (D.C.Cir.1984). Ultimately, on July 19, 1984, the British House of Lords ordered the injunction dissolved. House of Lords Judgment in *British Airways Board v. Laker Airways Ltd.* reprinted in XXIII Interg.Leg.Mats. 727 (1984).

Immediately following the House of Lords decision, Laker applied to this Court for the issuance of a temporary restraining

---

1. The injunction was subsequently vacated by the High Court, later reinstated by the Court of Appeal and then, as noted below, dissolved by the House of Lords.

order to prevent these defendants from repeating their previous conduct in the same or another form. The Court issued such an order, and a hearing was held on the motion for preliminary injunction on October 5, 1984.[2]

■ The irreparability of the injury to Laker in the event of further interference with the litigation here is obvious as is the likelihood of its success on the merits should there again be such interference. *Laker Airways v. Sabena, supra.* Further, while defendants profess that they do not intend to repeat their previous conduct, this primarily demonstrates that an injunction would not injure them. In short, under the traditional standards for injunctive relief[3] the issuance of a preliminary injunction is clearly warranted. The real question is—what activities should such an injunction cover? As to that, there does not now appear to be any real dispute about two of the three relevant problems.

First. There is general agreement that, following the decisions of the United States courts and that of the House of Lords, the defendants cannot maintain that they have the legal right to seek to frustrate the proceedings in this Court through orders of the British courts, irrespective of whether those orders operate directly to interfere with this Court's jurisdiction or whether they do so indirectly (by preventing Laker from litigating here). Injunctive relief to that end is therefore appropriate and will be granted.

Second. There is also general agreement that this Court should not, at least at this time, enjoin the so-called parallel proceedings in the British courts.[4] Injunctive relief against the institution or maintenance of such proceedings will accordingly be denied.

Third. The difficult issue—and the one on which the parties are in sharp disagreement—relates to the Court's authority to enjoin the defendants from seeking to importune the British Parliament or the British executive authorities[5] to take actions which might frustrate the ability of United States courts to continue with this litigation.[6]

■ The Court suggested to the parties that, because of its difficult and complexity, this issue be briefed, and that they assure that Court that during the briefing period they would not change the status quo.[7] British Airways agreed to do so; British Caledonian did not. Thus, although the Court has not yet decided whether it has the authority to issue an order which would permanently preclude these defendants from seeking to abort this lawsuit[8] by securing action by the British legislative or executive bodies,[9] it has no choice but to

2. The temporary restraining order was extended by agreement between the parties to October 9, 1984.

3. *WMATA v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C.Cir.1977).

4. A parallel proceeding can occur when two states share concurrent jurisdiction over a transaction. In such circumstances, each forum is ordinarily free to proceed to a judgment. An antisuit injunction should normally not issue to preempt parallel proceedings on the same in personam claim, but it can issue to prevent a party from seeking interdictory relief in another forum. *Laker Airways v. Sabena, supra,* 731 F.2d at 926–27.

5. Because of the structure of Great Britain's parliamentary system, there may not be as much difference between legislative and executive authorities in respect of the issues raised by

the current controversy as there would be if a similar situation arose in the United States.

6. One possible action, cited during the hearing on the preliminary injunction by way of example, would be an Act of Parliament, induced by these defendants, making it a criminal offense for Laker to proceed further with this lawsuit.

7. A possible assurance was phrased in various ways, one of them being an undertaking not to take action which would not be permitted if the existing temporary restraining order were extended.

8. In view of the past behavior of these defendants, it is, of course, not improbable that, unless restrained, they would proceed to interfere.

9. That this is a difficult issue is readily apparent. To cite but the most obvious examples, it is clear, on the one hand, that a court should not lightly interfere with the right of an entity to lobby its own government for any purpose, par-

issue a preliminary order to that effect at this time pending further briefing. Failure to do so could well moot this aspect of the proceedings and conceivably Laker's lawsuit against these defendants.

It should be well understood, however, that the Court is taking this action only to preserve the status quo pending the briefing and decision of the legislative-executive question. The issuance of today's injunction should therefore not be regarded as a definitive decision—one way or the other—on whether the Court has the power ultimately to enjoin defendants from seeking British legislative and executive remedies with respect to the continuation of this litigation by Laker, or whether such an injunction is advisable in these circumstances.

ticularly since less intrusive but possibly equally efficacious remedies may be available. See *Societe Internationale v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *United States v. Vetco,* 691 F.2d 1281 (9th Cir.1981). On the other hand, there is the fact that the British government owns British Airways and would be responsible for payment of antitrust damages here in the event of an adverse judgment. For that reason, the arm's length relationship which normally precludes interference with petitioning activities may not exist in this situation.