David Weaver ADAMS, et al.,
Plaintiffs,

v.

PAN AMERICAN WORLD AIRWAYS,
INC., et al., Defendants.

John Eric CLIFTON, et al., Plaintiffs,

v.

PAN AMERICAN WORLD AIRWAYS,
INC., et al., Defendants.

Civ. A. Nos. 86–0304, 86–0629.

United States District Court,
District of Columbia.

June 30, 1986.

Fred D. Turnage, Cleary, Gottlieb, Steen & Hamilton, Washington, D.C., for Pan American World Airways, Inc.

George T. Manning, Jones, Day, Reavis & Pogue, Washington, D.C., for Trans World Airlines, Inc.

John W. Dickey, Sullivan & Cromwell, New York City, for British Airways, Inc.

Gary D. Wilson, Wilmer, Cutler & Pickering, Washington, D.C., for Lufthansa German Airlines.

Laurence A. Short, Short, Klein & Karas, P.C., Washington, D.C., for Lufthansa German Airlines and Swissair, Swiss Air Transport Co. Limited.

Douglas Rosenthal, Sutherland, Asbill & Brennan, Washington, D.C., for British Caledonian Airways.

Leonard N. Bebchick, Leonard N. Bebchick, P.C., Washington, D.C., for British Caledonian Airways.

Robert B. von Mehren, Debevoise & Plimpton, New York City, for KLM, Royal Dutch Airlines.

James J. Murphy, Bryan, Cave, McPheeters & McRoberts, Washington, D.C., for McDonnell Douglas Corp. and McDonnell Douglas Finance Corp.

Sutton Keany, Winthrop, Stimson, Putnam & Roberts, New York City, for Scandinavian Airlines System.

Dirk Loermakers, De Bandt, Van Hecke, Lagae & Van Bael, New York City, for Sabena, Belgian World Airlines.

Robert M. Beckman, David M. Kirstein, Beckman & Kirstein, Washington, D.C., for plaintiff.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

The instant action is the fourth antitrust suit growing out of the collapse of Laker Airways.[1] The first, and principal action (Laker I) was brought in this Court by Laker against Pan American Airways, TWA, British Airways, British Caledonian Airways, Swissair, Lufthansa German, McDonnell Douglas, Belgian World Airways, Royal Dutch Airways, Union de Transports Aeriens and Scandinavian Air-

---

1. This action actually represents two separate lawsuits, *Adams v. Pan American World Airways*, C.A. 86–0304, and *Clifton v. Pan American World Airways*, C.A. 86–0629, consolidated on March 3, 1986 by this Court. For practical purposes, however, this is a single action and will be referred to as such in this Memorandum.

lines System.[2] Following complex pretrial motions,[3] the parties agreed on a settlement, which yielded substantial payments to Laker's stockholders, its creditors, and its attorneys. A second lawsuit (Laker II)[4] was brought in this Court as a class action on behalf of individuals who claimed that they would have travelled to Great Britain on Laker Airways had it been in existence, but who used the more expensive conventional carriers instead following Laker's demise. This action was likewise settled.[5] The defendants established a fund from which individual transatlantic travellers during a certain period could draw for coupons which reduced transatlantic fares on certain carriers during a five-year period. A third lawsuit (Laker III) filed in the Central District of California, was brought on behalf of travel agents who claimed to have lost business as a consequence of the Laker demise brought about by defendants' alleged antitrust conspiracy. That action was dismissed for lack of standing.[6]

The instant action is brought on behalf of a number of former employees of Laker Airways who claim to have been damaged as a result of the same conspiracy that was before this Court in Laker I and II and before the court in California in Laker III.[7] The defendants have moved to dismiss.[8] The Court has carefully considered the motion, the briefs in support of the motion, in opposition thereto, and in reply, the various affidavits, as well as the arguments ad-

vanced at an oral hearing, and it has concluded that the motion must be granted.

Section 4 of the Clayton Act permits recovery of damages by individuals who are injured in their business or property by reason of a violation of the antitrust laws. Notwithstanding the broad language of section 4, it is well established that persons who are only indirectly or tangentially affected by an antitrust violation may not recover under the antitrust laws. *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 534–35, 103 S.Ct. 897, 906–07, 74 L.Ed.2d 723 (1983). Indeed, it is safe to generalize that, barring unusual circumstances, only consumers or competitors in the market in which trade has been restrained have standing to bring a section 4 action. *Id.* at 539, 103 S.Ct. at 909. As the Supreme Court noted in *Associated General Contractors,* the antitrust laws were enacted "to assure customers" the benefit of price competition, and its central interest is the protection of the economic freedom of "participants in the relevant market." *Id.* at 538, 103 S.Ct. at 908. Thus, it is not surprising that there is not a single reported case where employees of the victim of an antitrust violation have been allowed to recover for loss of employment resulting from the injury to the employer.

Plaintiffs rely to the contrary primarily upon two cases—*Radovich v. National*

---

**2.** Initially these were three lawsuits, but in the course of the litigation these actions were consolidated. The three cases were assigned civil actions numbers 82–3362, 83–0416, and 83–2791.

**3.** *See Laker Airways v. Pan American World Airways,* 604 F.Supp. 280 (D.D.C.1984); *Laker Airways v. Pan American World Airways,* 596 F.Supp. 202 (D.D.C.1984); *Laker Airways v. Pan American World Airways,* 577 F.Supp. 348 (D.D.C.1983); *Laker Airways v. Pan American World Airways,* 568 F.Supp. 811 (D.D.C.1983); *Laker Airways v. Pan American World Airways,* 559 F.Supp. 1124 (1983).

**4.** This action consisted of five lawsuits consolidated under the caption *In re Atlantic Air Travel Antitrust Litigation,* C.A. 84–1013.

**5.** Since this was a class action, the proposed settlement agreement in Laker II was approved by the Court following a public protest period and a hearing. *In re Atlantic Air Travel Antitrust Litigation,* C.A. 84–1013, Memorandum Order of March 18, 1986 (D.D.C.).

**6.** *Brian Clewer, Inc. v. Pan American World Airways,* CV 86–119 CBM, May 14, 1986 (Consuelo Marshall, J.).

**7.** The number of defendants in the various actions is not always precisely the same, but the principal defendants (Pan American, TWA, British Airways) appear in all the actions.

**8.** In addition, defendant Union de Transports Aeriens (UTA) has requested sanctions against plaintiffs' counsel.

*Football League,* 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957), and *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982), but neither supports their argument. Radovich, a professional football player, claimed to have been personally blacklisted by all the employers in professional football, and the Supreme Court held that on account of this group boycott his complaint did state a cause of action. The Laker employees do not and cannot allege any kind of boycott; when their employer was forced out of business, they had to look for employment elsewhere, and in this endeavor some were successful and some were not. Similarly, the allegations in *McCready* are unlike the claims made here. The market in that case was that for psychotherapeutic services, and the plaintiff was both a consumer of the services and a competitor in the restrained market. *See Associated General Contractors, supra,* 459 U.S. at 538–39, 103 S.Ct. at 908–09. Plaintiffs here, of course, qualify under neither category. Indeed, plaintiffs do not even participate in the same market as the defendants. Laker and the airlines against which it brought suit were engaged in the market for air transportation; the plaintiffs in the instant action are sellers in the various labor markets in which the airlines are buyers.

The well-established proposition that only the direct victims of antitrust violations may recover is supported in this case by a number of relevant factors.

First. Any damages would, of necessity, be extremely speculative. That is so if only because it is not at all clear, nor could it be proved with any degree of certainty, how long Laker Airways would have been in business even if there had been no antitrust conspiracy. The airline industry has been quite volatile in recent years; Laker's collapse occurred when other airlines were losing money; and mergers and bankruptcies have occurred with some frequency. Thus, it is not certain how long Laker would have operated, and thus how long the plaintiffs would have had employment with Laker. Beyond that, each of the plaintiffs would be faced with a second level of uncertainty with regard to his individual losses—how long he would have been employed by Laker Airways or any other airline, at what salary, with what seniority, with what job security, with what fringe benefits, and the like. Finally, plaintiffs also request damages for emotional distress—an item particularly difficult to quantify in this type of case.

Where demonstration of each plaintiff's injury and damages promises unduly long and complicated proceedings involving massive evidence and complicated theories, antitrust standing is likely to be denied. *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 493, 88 S.Ct. 2224, 2231, 20 L.Ed.2d 1231 (1968); *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977); *McCready, supra,* 457 U.S. at 475 n. 11, 102 S.Ct. at 2546 n. 11; *Associated General Contractors v. Carpenters, supra,* 459 U.S. at 542–44, 103 S.Ct. at 910–12.

Second. As indicated above, the instant action is not the first to seek damages arising from the collapse of Laker Airways. The first lawsuit provided compensation to the stockholders, the creditors, and their attorneys; the second awarded compensation to would-be travellers on Laker; and the third lawsuit (unsuccessfully) sought damages for travel agents. All the lawsuits assumed high profits by Laker in spite of its low fares, and complex apportionment of the (assumed) revenues would have to take place in the event the instant action were permitted to proceed. It is to be noted, too, that these plaintiffs, as Laker employees, were also creditors and entitled to share in the proceeds of the settlement of the first Laker action.

Third. As stated above, the principal lawsuit arising out of the collapse of Laker Airways (Laker I) was settled, and so was the action on behalf of the transatlantic travellers (Laker II). Indeed, settlement without trial is common in major antitrust actions, and it is particularly to be preferred where, as here, difficult and delicate problems arising from conflicting national

laws and policies are involved, calling in the end for direct confrontations between governments and courts.[9] Yet defendants in such lawsuits are unlikely to enter into settlements if each such settlement can immediately be followed by a new treble damage lawsuit based on the same allegations as the first, the only real distinction being that some new group of alleged victims is bringing the action.[10]

For the reasons stated, defendants' motion will be granted[11] and the action will be dismissed.

---

**9.** *See Laker Airways v. Pan American World Airways,* 604 F.Supp. 280 (D.D.C.1984); *Laker Airways v. Pan American World Airways,* 596 F.Supp. 202 (D.D.C.1984); *Laker Airways v. Pan American World Airways,* 577 F.Supp. 348 (D.D.C.1983); *Laker Airways v. Pan American World Airways,* 559 F.Supp. 1124 (D.D.C.1983).

**10.** None of these obstacles is overcome by plaintiffs' allegations in the complaint that defendants intended to injure them. *See Associated General Contractors v. Carpenters, supra,* 459 U.S. at 537, 103 S.Ct. at 908.

**11.** However the Court denies defendant UTA's request for sanctions.