Scilippi, J.
Rauland-Borg Corporation, the only defendant involved on this appeal, is a manufacturer of sonic equipment in Illinois, and is not qualified to do business in New York, has no place of business here, no officers, agents or employees, no property either real or personal, and no telephone listing. Its products are sold in New York State by a number of distributors, all of whom are independent businessmen selling the sound equipment of other manufacturers as well as that of RaulandBorg. Less than 5% of Rauland-Borg’s total sales are made to its distributors in New York and, when distributors wish to order its products, they mail their orders to Chicago, where the orders are accepted or rejected. If an order is accepted, the goods are shipped by Rauland-Borg, f. o. b. Chicago.
Personal service was effected upon this foreign corporate defendant in Illinois in accordance with CPLR 302. The question presented on appeal is whether Rauland-Borg either transacted any business here or committed a tortious act here, either or both of which gave rise to the causes of action alleged (breach of contract and conspiracy in restraint of trade) so as to give the courts of this State personal jurisdiction under CPLR 302.
In 1957 plaintiff contacted one Bressler, a representative of several manufacturers of electronic equipment, and, through his intervention, became a distributor of defendant’s wares in Westchester and some adjoining counties. Defendant has less than a dozen such distributors in this State.
The affidavits submitted by the manager of Rauland-Borg’s sound products division state that, in accordance with its customary procedure, the proposal that McKee become a distributor of Rauland-Borg products was simply transmitted by Bressler to the home office in Chicago where, after investigation of McKee’s suitability, the application for a distributorship was accepted. The trial court gave £ 1 plaintiff the benefit of the doubt as to the place where the [original unwritten] contract was made,” i.e., in New York State, but found it££ not decisive ”. This distributorship agreement was for only one year, and has been renewed in subsequent years, according to Rauland-Borg, *380 in Illinois, until the alleged breach occurred in 1965 and which gave rise to this suit. No written agreement was ever executed, and, when questions arose with regard to the exact area that plaintiff’s distributorship was to cover, these questions were resolved by mail between the Chicago office of Eauland-Borg and McKee in New York.
In 1964 difficulties arose between plaintiff McKee and various consulting engineers who drew specifications for sound systems to be installed in schools in the Westchester area (several of whom are also codefendants in this case, not involved on this appeal). For the alleged purpose of alleviating these frictions, the defendant sent its representative, Carl Dorwaldt, manager of its sound products division, into this State in the latter part of 1964. In his own reply affidavit in support of the motion to dismiss the complaint for lack of jurisdiction (CPLB 3211, subd. [a], par. 8) he states:
‘ ‘ The answering affidavit refers to a visit I made to Mr. McKee’s office in the latter part of 1964, my first visit to New York in about one year. On that trip I visited a number of distributors in Pennsylvania and New Jersey and also stopped at "Mr. McKee’s place of business on December 10 for approximately two hours. Mr. Stallman, our representative for 13 northeastern states, whose home and office are in New Jersey, was also present. The meeting consisted of general discussion only during which Mr. McKee explained his legalistic position regarding engineering specifications and mentioned that this position had provoked friction between himself and engineers. # # #
“ Mr. Stallman thereafter did advise me that he had visited, the Weiser organization [a codefendant] a few times to try to ease the friction and that absolutely nothing had come of those visits.” (Emphasis added.)
After writing to McKee in December, 1964 and March, 1965 regarding the friction between McKee and the consulting engineers, Eauland-Borg finally wrote a letter on June 8,1965 terminating McKee’s distributorship and informing McKee that Eauland-Borg was ceasing to supply it with Eauland-Borg products, except as to then pending orders.
On o.r about September 25, 1965, the summons and complaint in this action were received by registered mail by the foreign- *381 based defendant in Illinois. The complaint listed four separate and independent causes of action, three of which involve Rauland-Borg. The first cause of action alleges a breach of the above referred to contract on the part of Rauland-Borg; the third and fourth causes of action allege a business conspiracy among the defendants to deprive the plaintiff of its customers and good will and to create an unlawful monopoly (see General Business Law, § 340). There is no question but that the breach took place, even as alleged by plaintiff, in Illinois when Rauland-Borg sent the letter dated June 8, 1965 to McKee notifying it that its distributorship was thereby terminated.
Defendant moved in Supreme Court, Westchester County (Dillon, J.), to dismiss the complaint for want of personal jurisdiction, process having been served upon it by registered mail in Illinois. The motion was granted and, after an affirmance and denial of leave to appeal at the Appellate Division, this court granted permission to appeal.
Justice Dillon found the facts insufficient to give defendant the minimum contacts in this State which are a prerequisite to the exercise of personal jurisdiction on a contractual cause of action. The court held, furthermore, that the tortious act, if any, occurred in Illinois where the contract was cancelled.
We cannot sustain jurisdiction under CPLR 302 (subd. [a], par. 2). The only assertion in the complaint against this defendant is that it ‘ ‘ has refused to sell any of its equipment to the plaintiff and has cancelled the agreement ’ \ Whether such averred misconduct constitutes a tort as well as a breach of contract is debatable but, assuming it does, it can hardly be declared a wrong happening within the State. The cancellation of the contract, the only conduct complained of in the complaint, indisputably took place in Illinois and we made it completely clear in Feathers v. McLucas (15 N Y 2d 443, 458) that, in Judge Fuld’s phrasing (at p. 460), “ The mere occurrence of the injury in this State certainly cannot serve to transmute an out-of-state tortious act into one committed here within the sense of the statutory wording.” Thus, if jurisdicion is to be sustained, it must be under paragraph 1 of subdivision (a) of CPLR 302.
There is no fixed standard by which to measure the minima contacts required to sustain jurisdiction under the provisions of *382 CPLE 302 (subd. [a], par. 1). However, it seems to us the contacts here, rather than being minimal, were so infinitesimal, both in light of Hanson v. Denckla (357 U. S. 235) and Longines-Wittnauer Watch Co. v. Barnes & Reinecke (15 N Y 2d 443), that jurisdiction of the New York courts cannot be sustained. Otherwise, every corporation whose officers or sales personnel happen to pass the time of day with a New York customer in New York runs the risk of being subjected to the personal jurisdiction of our courts.
The overriding criterion has been established by Hanson v. Denckla (supra) which characterized the minimum contact as being “ some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws ” (357 U. S., supra, p. 253).
In Longines-Wittnauer Watch Co. v. Barnes & Reinecke (supra), the defendant corporation, in addition to negotiating the contract and sending goods here, established its nexus with New York by maintaining its employees in this State for over two months in connection with the installation of the machines sold to Longines. In the present case, the dissenters would sustain jurisdiction because the plaintiff alleges the breach of a contractual relationship formed seven or more years before the events in question, the breach arising out of an act that admittedly took place in Chicago. Nevertheless, say the dissenters, we may exercise our jurisdiction because the original distributorship agreement was made or at least negotiated here (a consideration determinative of nothing, since the original agreement lapsed at the end of one year); the goods were used here by the plaintiff (a “unilateral activity”, hardly enough standing alone to sustain jurisdiction [see Hanson v. Denckla, supra, p. 253]); and a “ high level ” employee of the defendant and an area sales representative came to New York to look into the difficulties between plaintiff and plaintiff’s customers (these employees of defendant seem to have spent, in total, less than a full working day in the State in connection with this matter). To say that the contacts in this case between the defendant and this State are not “ overwhelming ” is to understate the case (cf. Standard Wine & Liq. Co. v. Bombay Spirits Co., 20 N Y 2d 13, decided May 25, 1967).
*383 In our enthusiasm to implement the reach of the long-arm statute (CPLR 302), we should not forget that defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent headquarters, or where they conduct substantial general business activities. Only in a rare case should they be compelled to answer a suit in a jurisdiction with which they have the barest of contact (e.g., McGee v. International Life Ins. Co., 355 U. S. 220).
A dismissal for lack of jurisdiction in the present case would work no undue hardship. It is possible that the complained of activities may come under the amended provisions of CPLR 302 (subd. [a]) * (L. 1966, ch. 590; see Simonson v. International Bank, 14 N Y 2d 281; cf. Kramer v. Vogl, 17 N Y 2d 27, 31). If the extra-State acts are insufficient under the amended statute, defendant Rauland-Borg can be sued elsewhere.
The order appealed from should be affirmed, with costs.

 § 302. “ (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomieiliary * * * who in person or through an agent: * * *
3. commits a tortious act without the state causing injury to person or property within the state * * * if he
(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce”,