Howard N. **BELDOCK**, as Trustee of Rondon Trading Corp., Plaintiff,

v.

**BRAUN, N. A.,** Defendant.

No. 77 Civ. 4220.

United States District Court, S. D. New York.

Jan. 25, 1979.

Javits & Javits, New York City, for plaintiff; William Schlimbach, New York City, of counsel.

Oliner & Oliner, New York City, for defendant; Jacob Oliner, New York City, of counsel.

## OPINION

GAGLIARDI, District Judge.

Howard Beldock, as trustee of Rondon Trading Corp. ("Rondon"), commenced this action to recover voidable preferences that Rondon allegedly paid to the defendant, Braun North American ("Braun") in violation of § 60 of the Bankruptcy Act, 11 U.S.C. § 96. Defendant has filed a motion to dismiss on the ground that this court lacks personal jurisdiction over it. Rule 12(b)(2) Fed.R.Civ.P. Plaintiff has opposed defendant's motion and has filed a cross-motion for summary judgment. Rule 56, Fed.R.Civ.P. For the reasons stated below, defendant's motion to dismiss is granted.

### Statement of Facts

The facts in this case are substantially undisputed. Rondon, adjudicated a bankrupt under Chapter XI of the Bankruptcy Act on February 2, 1976, was formerly a New York corporation engaged in the export business. On or about July 1973, Rondon contacted the defendant at its Cambridge, Massachusetts offices for the purpose of entering into an ongoing business relationship with it.[1] Defendant is a Delaware corporation and is not qualified to do business in New York. From July 1973 to November 1974 defendant sold and shipped its products to the plaintiff in New York.[2] During this time, Rondon contacted the defendant either by mail or by telephone at defendant's Massachusetts offices whenever it wanted to order additional merchandise. At no time did the defendant solicit any business from Rondon or did the parties negotiate or sign any agreements in New York.

The defendant made numerous unsuccessful efforts between November 1974 and April 1975 to collect payment for the merchandise that it had sold to Rondon. Rondon, however, had become insolvent and, in April 1975, contacted its major creditors in an attempt to forestall bankruptcy. One such creditor was the defendant. On April 22nd, the defendant sent its president, its attorney, and a credit official to Rondon's offices in New York City to meet with Rondon's representatives for the express purpose of working out a method by which Rondon could repay the $100,000 owed the defendant. Realizing that Rondon would declare bankruptcy if an arrangement could not be reached, defendant agreed to permit Rondon to pay it $5,000 a month until the debt was finally retired. The terms of the agreement were embodied subsequently in a letter that was sent to the defendant at its Massachusetts offices. Defendant countersigned the agreement and returned it by mail to the plaintiff in New York. Plaintiff made monthly payments, amounting to $15,100 (Exh. 7), to the plaintiff from May to July 1975. Rondon filed a petition for an arrangement under Chapter XI of the Bankruptcy Act on September 5, 1975 and was adjudicated a bankrupt thereafter.

1. The affidavits submitted to the court seem to indicate that the parties never entered into a written contract (Rohe Aff. ¶ 4) (Schlimbach Aff. at 3).

2. Defense counsel takes the position that the fact that invoices for the shipments were billed to Rondon in New York (Exh. 5) does not furnish any evidence that the shipments were actually received within the state. While this may be true, this court construes the evidence on this issue in a light most favorable to the plaintiff. See, e. g., El Cid, Ltd. v. New Jersey Zinc Co., 444 F.Supp. 845 (S.D.N.Y.1977).

## Discussion

Rule 4(e) of the Federal Rules of Civil Procedure and Section 302(a)(1) of the New York Civil Practice Law and Rules vests this court with "personal jurisdiction over any non-domiciliary [of the State of New York], in person or through an agent . . [who] transacts business within the state" as to any cause of action that arises from such transaction. As the only basis upon which the plaintiff can set forth a colorable claim that the defendant is subject to jurisdiction in New York, the issue before this court is clear: namely, whether or not the defendant, a nondomiciliary of New York, "transacted business" in New York within the meaning of CPLR § 302(a)(1).[3]

There is no mechanical formula upon which the answer to this inquiry is inevitably premised. Instead, each case requires a *sui generis* examination of "the totality of the defendant's activities with the forum" to determine whether or not the nature and quality of defendant's conduct in connection with the matter in suit indicates that it purposely availed itself of the benefits and protections of New York. *See, e. g., Sterling National Bank & Trust Co. v. Fidelity Mortgage Investors,* 510 F.2d 870 (2d Cir. 1975); *George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 394 N.Y.S. 844, 363 N.E.2d 551 (1977); *McKee Electric Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967); *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 229 N.E.2d 604 (1967). Defendant engaged in two activities that the plaintiff asserts, when taken together, subject the defendant to the jurisdiction of this court. These are the defendant's shipment of goods to the plaintiff in New York between July 1973 and November 1974, and the presence of defendant's agents at plaintiff's New York offices on April 22, 1975 for the purpose of preparing a pay-out schedule. Based upon its reading of the case law interpreting § 302(a)(1), this court finds that these activities are insufficient to support § 302(a)(1) jurisdiction.

In the leading case of *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, supra,* the New York Court of Appeals found a "transaction of business" to support § 302(a)(1) jurisdiction based upon the composite of

> . . . substantial preliminary negotiations through high-level personnel during a period of some two months; the actual execution of a supplementary contract; the shipment for use here, subject to acceptance following delivery, of two specially designed machines, priced at the not inconsiderable sum of $118,000; and the rendition of services over a period of some three months by two of the appellant's top engineers in supervising the installation and testing of the complex machines.

15 N.Y.2d at 457, 261 N.Y.S.2d at 19, 209 N.E.2d at 75. The court indicated, however, that it ". . . need not determine whether any one of the foregoing activities would, in and of itself, suffice to meet the statutory standard; in combination they more than meet that standard." 15 N.Y.2d at 458, 261 N.Y.S.2d at 19, 209 N.E.2d at 76.

The following year in *Kramer v. Vogl,* 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966), the Court of Appeals directly addressed one of the issues left open in *Longines:* "whether the phrase 'transacts any business within the state' covers the situation of a nonresident who never comes into New York State but who sells and sends goods into the State pursuant to an order sent from within the State." *Id.* at 31, 267 N.Y.S.2d 903, 215 N.E.2d 161. Speaking for a unanimous court, Chief Judge Desmond held that the mere shipment and delivery of goods into New York does not, by itself, confer long-arm jurisdiction. *Id.* at 32, 267

**3.** The court notes that if defendant's activities within New York are found sufficient to satisfy this standard, jurisdiction over the defendant can be sustained. There is no question that the second requirement of § 302(a)(1), that the cause of action arise from the instant transaction of business, is met in this case: the plaintiff, as trustee for Rondon is seeking to recover the allegedly voidable preference that Rondon paid to the defendant for the goods it had purchased.

N.Y.S.2d 904, 215 N.E.2d 162. The court distinguished several earlier decisions in which it had found jurisdiction on the grounds that either "a nonresident defendant who ha[d] one or more local salesmen in this State or . . . solicit[ed] business in this State by means of a catalogue, advertisements, or other promotional material circulated here." *Id.* at 31, 267 N.Y.S.2d 903, 215 N.E.2d 161.

Since 1966, New York courts, federal and state, have been presented with a host of situations between the extremes of *Longines* and *Kramer* and have had to determine on which side of the jurisdictional line each case falls. *See, e. g.,* McLaughlin, *Practice Commentaries* 7B C.P.L.R. § 302(a)(1) (McKinney 1972) and cases cited therein. In order to find jurisdiction in the instant action, the presence of defendant's agent in New York for the April 22nd meeting would have to be viewed, either by itself or in conjunction with the shipment of defendant's goods into New York, as sufficient activity to satisfy the statutory requirements of § 302(a)(1). After a careful review of the case law, the court declines to adopt this view.

The New York Court of Appeals has recently stated that:

> [A]lthough the nature and purpose of a solitary business meeting conducted for a single day in New York may supply the minimum contacts necessary to subject a nonresident participant to the jurisdiction of our courts, . . . physical presence alone cannot talismanically transform any and all business dealings into business transactions under CPLR 302 (subd. [a], par. [1]) . . .

*Presidential Realty Corp. v. Michael Square West,* 44 N.Y.2d 672, 673, 405 N.Y.S.2d 37, 38, 376 N.E.2d 198, 199 (1978) (citations omitted). New York courts have thus permitted the nature and quality of defendants' one day visits into New York to "so clearly set them apart . . . [as to permit] one to serve as the basis for jurisdiction, and the other not." *George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 654, 394 N.Y.S.2d 844, 848, 363 N.E.2d 551, 555

(1977). In *McKee Electric Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967), for example, defendant manufactured sound equipment in Illinois and shipped it f. o. b. Chicago to the plaintiff, one of his distributors, at plaintiff's New York offices. The parties never executed a written distributorship agreement and all questions regarding the precise area of plaintiff's distributorship were resolved by mail. During the course of the parties' business relationship, difficulties arose between the plaintiff and various engineers who installed the sound systems for the plaintiff. To alleviate this friction, the defendant sent two of its agents into New York to speak with the plaintiff. This attempt to help solve the dispute, as well as other attempts which were conducted by mail, were apparently unsuccessful. Shortly thereafter, the defendant informed the plaintiff that its distributorship was being terminated. Holding that there was no personal jurisdiction over the defendant because its transactions within New York were "infinitesimal", the court cautioned that another result would mean that

> every corporation whose officers or sales personnel happen to pass the time of day with a New York customer in New York runs the risk of being subjected to the personal jurisdiction of our courts.

*Id.* at 382, 283 N.Y.S.2d 34, 37, 229 N.E.2d 607. In *George Reiner & Co. v. Schwartz, supra,* however, the Court of Appeals reached a contrary result on the basis of a different factual setting. In *Reiner,* the defendant, a Massachusetts resident, came to plaintiff's offices in New York in response to an employment advertisement that appeared in a Boston newspaper. After a day of negotiations, the parties entered into a contract which authorized the defendant to sell the plaintiff's products in New England and which set forth the terms which would bind the parties. The Court of Appeals held that defendant's physical presence in New York when he entered into the contract, coupled with its contemplation of a continuing relationship between the parties, satisfied the § 302(a)(1) transaction requirement. Most recently, in *Presidential*

*Realty Corp. v. Michael West Corp., supra,* the Court of Appeals was once again called upon to determine the scope of § 302(a)(1). In a unanimous memorandum decision, the court held that defendant's presence at a meeting in New York, resulting in conciliatory modifications incorporated into a signed agreement regarding the terms of a contract for the sale of an Alabama real estate development, were insufficient to confer personal jurisdiction. *Id.* at 673, 283 N.Y.S.2d 38, 229 N.E.2d 199.

In the instant case, defendant's officers came into New York pursuant to Rondon's request to negotiate a realistic repayment schedule of a $100,000 debt to the defendants. This activity cannot be said to be the type of "transaction of business" that was contemplated by the New York legislature in adopting § 302(a)(1) or the New York Court of Appeals in its interpretations of this provision. Assuming that the pay-out schedule can be characterized as a contract the terms of which were agreed upon within New York, the parties never intended the schedule to provide the framework for any sort of continuing relationship between them. It appears that the parties had ceased doing business together nearly six months before the April 22nd meeting. The express purpose and result of this meeting, rather than to make arrangements for resuming the sale of defendant's goods to the plaintiff, was merely to permit the plaintiff to extend the time in which it could pay to the defendant a debt that was already due and owing. Courts that have found jurisdiction under § 302(a)(1) either partially or completely based upon the fact that the parties negotiated a contract within New York have reached this result because such activity has constituted an "act by which the defendant purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus evoking the benefits and protections of its law."

*George Reiner & Co. Inc. v. Schwartz, supra* at 652, 283 N.Y.S.2d 84, 229 N.E.2d 554 *quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *See also Sterling National Bank & Trust Co. v. Fidelity Mortgage Investors, supra* at 874; *Hi Fashion Wigs, Inc. v. Peter Hammond Advertising, Inc.,* 32 N.Y.2d 583, 347 N.Y.S.2d 47, 50, 300 N.E.2d 421, 423 (1973). Such is not the case here. Although it may be argued that the defendant derived some economic benefit from the April 22nd meeting because the pay-out schedule made the collection of the debt more probable, this court refuses to rest jurisdiction on such a thin thread. Defendant had an unqualified right to be paid even prior to the April 22nd meeting. Thus, in this case, as in *Presidential Realty,* the defendant's agents entered New York merely for the purpose of making minor modifications of a prior contractual arrangement. Interpreting § 302(a)(1) in an analogous situation, the Second Circuit has held that the presence of defendant's agent within New York for the purpose of agreeing upon an employment contract with the plaintiff did not satisfy the "quantum of negotiations" necessary for § 302(a)(1) jurisdiction when most of the material terms of the contract has already been fixed by the plaintiff. *Lehigh Valley Industries, Inc. v. Birenbaum,* 527 F.2d 87, 91 (2d Cir. 1975).[4] Despite the liberal construction that § 302(a)(1) has often been given, the teachings of both the Second Circuit and the New York Court of Appeals indicate that the activities of the defendant in this action do not expose it to New York's long arm jurisdiction.

Given this court's assessment of the nature and quality of defendant's contact with New York at the April 22nd meeting, this court also fails to find that this meeting supplied the additional activity of the defendant within New York to confer jurisdiction based upon the mere shipment rule

---

4. *See also Galgay v. Bulletin Co., Inc.,* 504 F.2d 1062 (2d Cir. 1974) (nonresident defendant corporation did not transact business in New York when it (1) executed a sales contract, but concededly did not negotiate it, within New York, (2) agreed to retain an agent in New York for the purpose of transporting the goods purchased from the New York plaintiff to defendant's Philadelphia offices, (3) assumed the risk of loss on machinery while the goods were in transit, and (4) agreed that the contract would be governed by New York law).

of *Kramer v. Vogl.* Each of the cases which the New York Court of Appeals distinguished in *Kramer* involved much more purposeful activities than those presented in this case. *See Kramer v. Vogl, supra,* 17 N.Y.2d at 31, 267 N.Y.S.2d 903, 215 N.E.2d 161.

### Conclusion

Accordingly, defendant's motion to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2), Fed.R.Civ.P., is granted. Let the Clerk enter judgment dismissing the complaint without costs.

So Ordered.