Phyllis BERK, Plaintiff,

v.

Zena NEMETZ and Back Bay Restorations, Inc., as general partners of Back Bay Restoration Company, a Limited Partnership; Julie Nicholas Gates, as Executrix of the Estate of Alfred Percy Gates, Jr., deceased, Defendants.

No. 85 CIV. 8956 (PKL).

United States District Court,
S.D. New York.

Nov. 4, 1986.

Meissner, Tisch & Kleinberg, New York City, for plaintiff; Samuel Rosenberg, of counsel.

Andrea Mobilia, Boston, Mass., for defendants.

## OPINION & ORDER

LEISURE, District Judge:

In this diversity action plaintiff, Phyllis Berk, a citizen and resident of New York, has sued defendants Zena Nemetz and Back Bay Restorations, Inc. ("Restorations"), as general partners of Back Bay Restoration Company ("BBR"), a limited partnership, all residents and domiciliaries of Massachusetts, and Julie Gates, a resident of Texas, as executrix of the Estate of Alfred Gates, Jr. Plaintiff's claim is twofold: first, she seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, stating that she is the legal owner of the limited partnership interest in BBR purchased by Mr. Gates; second, plaintiff seeks to impose a constructive trust over this limited partnership interest.

Defendants Nemetz, Restorations, and BBR (hereinafter referred to collectively as the "movants") have moved pursuant to Fed.R.Civ.P. 12(b)(2) and (3) for dismissal of this action on the grounds of improper venue and lack of personal jurisdiction. In the alternative, the movants have requested pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), a transfer of this action to the District of Massachusetts. For the following reasons, the Court hereby grants the movants' request for transfer.

## FACTUAL BACKGROUND

This case arises from an allegedly close personal and business relationship between plaintiff and Mr. Gates. Plaintiff claims that she and Mr. Gates knew each other from 1971 until his death in 1985. Affidavit of Phyllis Berk in Opposition to Motion to Dismiss ¶ 2. During that time, plaintiff alleges that Mr. Gates lived and worked at the Hotel Carlyle, in New York City, except for a brief stay with an associate in Greenwich, Connecticut. Id.

Plaintiff alleges that she and Mr. Gates entered into their personal and business relationship in 1971. She claims that they each promised and agreed to aid and support the other. Plaintiff further alleges that she involved herself in Mr. Gates' business activities and assisted him from 1971 until his death in 1985. In return, she claims that he cared for her and provided for her financial needs. Mr. Gates also specifically agreed to provide for plaintiff after his retirement or in the event of his death. Id. at ¶ 3. These agreements were all allegedly made in New York.

The following facts are of particular interest at this juncture. According to plaintiff, in 1977 Mr. Gates informed her of a solicitation for a limited partnership he had received from movants. He told plaintiff he was interested in subscribing to the partnership on her behalf. Id. at ¶ 4.

In furtherance of this interest, Mr. Gates arranged for a meeting among the parties. This meeting was held in the fall of 1977 at the Hotel Carlyle in New York City. At the meeting movant Nemetz, plaintiff, and Mr. Gates discussed the "details, prospects and requirements" for the sale to Mr. Gates of an interest in BBR, a limited partnership. Id. According to plaintiff, at this meeting Mr. Gates informed Nemetz that he intended to purchase the partnership interest as the agent and nominee of plaintiff. In other words, Mr. Gates in-

formed Ms. Nemetz that his limited partnership interest would be the property of plaintiff and that she would be entitled to any payments or profits therefrom.

Subsequent to this meeting the parties met again, this time in Boston, Massachusetts, where they discussed the partnership further. At this meeting, plaintiff alleges that Mr. Gates again made clear to Ms. Nemetz that plaintiff would be the real owner of the limited partnership interest and that he would be merely her nominee. *Id.* at ¶ 5.

No partnership arrangement was actually agreed upon or executed during the aforesaid meeting in New York. Furthermore, more than a predominant share of the arrangements regarding Mr. Gates' purchase of an interest in the limited partnership were orchestrated in Massachusetts. In fact, plaintiff's papers suggest that—aside from Mr. Gates' special attention to plaintiff's status as the real party in interest—the meeting in New York was merely exploratory. The subsequent meeting in Boston reinforces the Court's conclusion that the New York meeting was merely of a preliminary nature.

The purchase agreement for the limited partnership interest in BBR was executed in Massachusetts. The movants carry on all their business dealings in Massachusetts. Furthermore, all subsequent interstate communications between the movants and Mr. Gates consisted of letters mailed by the movants to Mr. Gates in Greenwich, Connecticut and Houston, Texas.

## LEGAL DISCUSSION

### A. *Personal Jurisdiction*

■ Subject matter jurisdiction in this action is based on diversity of citizenship. 28 U.S.C. § 1332. Therefore, the issue of personal jurisdiction is determined by the law of the forum state, in this case, New York. *See, e.g., Arrowsmith v. United Press Int'l,* 320 F.2d 219, 223 (2d Cir.1963). New York Civil Practice Law & Rules ("CPLR") sections 301 and 302 set forth the basis upon which New York courts may assert jurisdiction over a non-resident person or foreign corporation.

■ The Court is not unmindful of the rule that on a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R. Civ.P. 12(b)(2), the pleadings and affidavits are to be construed in the light most favorable to plaintiff. In response to such a motion "the plaintiff need make only a prima facie showing of jurisdiction through its affidavits and supporting materials." *Stone v. Chung Pei Chem. Indus. Co.,* 790 F.2d 20, 22 (2d Cir.1986) (quoting *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981)). After reviewing the documents submitted in opposition to the motion, the Court concludes that plaintiff has failed to make such a showing.

1. *The Movants Are Not "Doing Business" In New York*

■ CPLR § 301 provides that "[a] court may exercise such jurisdiction over persons, property or status as might have been exercised heretofore." In the case of a foreign corporation, § 301 keeps alive the case law existing prior to its enactment, which provided that a corporation is "doing business" and is therefore "present" in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if its does business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917); *accord Laufer v. Ostrow,* 55 N.Y.2d 305, 449 N.Y. S.2d 456, 434 N.E.2d 692 (1982). A non-domicilliary may be served outside New York, and sued upon any cause of action, if it engages in a continuous and systematic course of doing business in New York. *Frummer v. Hilton Hotels Int'l,* 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 853, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967) (citations omitted); *see Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951, 953 (2d Cir.1967) (citation omitted). Whether a corporation may be deemed to be present

by virtue of its doing business in the jurisdiction depends upon the application of a "simple and pragmatic" test. *Bryant v. Finnish Nat'l Airline*, 15 N.Y.2d 426, 432, 260 N.Y.S.2d 625, 628–29, 208 N.E.2d 439, 441 (1965). The Court is not persuaded that this test is met upon the present record.

Plaintiff merely alleges that Mr. Gates received a solicitation from the named defendants regarding the purchase of an interest in a limited partnership interest. Pursuant to that solicitation, movant Nemetz allegedly met with plaintiff and Mr. Gates at the Hotel Carlyle in New York City. At the meeting the parties merely *discussed* the details, prospects and requirements for the sale of an interest in the limited partnership.

■ The New York courts, in applying the pragmatic test of § 301 jurisdiction, have focused upon factors including: the existence of an office in New York; the presence of bank accounts and other property in the state; the solicitation of business in the state; and the presence of employees of the foreign defendant in the state. *See, e.g., Frummer*, 19 N.Y.2d at 537, 281 N.Y.S.2d at 44, 227 N.E.2d at 853 (quoting *Bryant*, 15 N.Y.2d at 432, 260 N.Y.S.2d at 629, 208 N.E.2d at 441–42); *see also Liquid Carriers*, 375 F.2d at 953. Plaintiff here only alleges one—solicitation of business—of the aforementioned elements.

■ The mere solicitation of business in New York by a foreign entity does not constitute doing business under § 301. *Diskin v. Starck*, 538 F.Supp. 877, 880 (E.D.N.Y.1982) (citing *Miller v. Surf Properties, Inc.*, 4 N.Y.2d 475, 480, 151 N.E.2d 874, 877, 176 N.Y.S.2d 318, 321 (1958); *see Dunn v. Southern Charters, Inc.*, 506 F.Supp. 564, 567 (E.D.N.Y.1981)). The fact that movant Nemetz, without any other representative of movants, visited New York City on *one occasion* does not satisfy the Court that movants were permanently or continuously doing business in New York. Plaintiff introduces no evidence regarding whether movants solicited other entities in New York with respect to their participation in the limited partnership. Furthermore, plaintiff fails to detail whether movants had advertised in New York, whether substantial revenues or capital were raised as a result of movants' solicitation efforts in New York, or whether movants had previously or subsequently solicited any business in New York, *inter alia.*

The limited evidence before the Court regarding movants' solicitation effort in New York coupled with the absence of any evidence with respect to the aforementioned factors, compels the Court to find that it does not have jurisdiction over movants pursuant to § 301. The Court turns next to § 302, to consider if it affords jurisdiction over movants.

### 2. *Movants Did Not "Transact Business" In New York*

■ CPLR § 302(a)(1) states that a court may exercise personal jurisdiction over any nondomiciliary who "transacts any business within the state." To invoke § 302(a)(1), a plaintiff must demonstrate that the defendants transacted business within New York and that the cause of action arises out of these activities.

The starting point in any consideration of § 302 is *Longines-Wittenauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, *cert. denied*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). In *Longines*, the

> [d]efendant, a Delaware Corporation, operating in Illinois, manufactured special machinery for the plaintiff. Prior to consummating the agreement, *extensive* negotiations were held in both New York ... and Illinois, with key officers of the defendant coming on *occasion* to New York.... After execution of the contract [in Illinois] and before delivery of the machines, difficulties were experienced which required *several of the defendant's officers, engineers, and employees to come to New York,* the upshot of which was the *execution in New York*

*of a supplemental agreement* increasing the purchase price.

... [T]hereafter *several of defendant's engineers came to New York* to participate in the installation and testing of the machines before the plaintiff accepted them.

N.Y.Civ.Prac.L. & R. § 302(a)(1) practice commentaries C302:9 (McKinney 1972) (emphasis supplied).

The New York Court of Appeals sustained jurisdiction upon these facts because of the totality of the defendant's voluntary activities within the forum. The court refused to determine whether any of the foregoing contacts would, in and of themselves, meet the transacting business test. The defendant was found to have engaged in purposeful activity in New York, thereby invoking the benefit of New York law. *Longines*, 15 N.Y.2d at 458, 261 N.Y.S.2d at 19, 209 N.E.2d at 76 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)).

The aggregation of defendant's activities, coupled with the selective weighing of these various actions, hardly forms a precise test. In fact, the only certain aspect of the standard to be used under § 302 is that it is less rigorous than that imposed by § 301. *See Simonson v. International Bank*, 14 N.Y.2d 281, 288, 251 N.Y.S.2d 433, 438–39, 200 N.E.2d 427, 431 (1964). The criteria cannot be mechanically imposed; each analysis under § 302 is *sui generis*.

■ As indicated by *Longines* and its progeny, the primary factors considered by the courts under § 302 include: the physical presence of defendant in New York; the execution by defendant of a contract in New York; the risk of loss as it affects the New York transaction; the performance of the contract in New York. Plaintiff argues that movant Nemetz's mere physical presence in New York—on only one brief occasion—is sufficient to bestow jurisdiction upon this Court.

Although it is certainly true that one of the most concrete manifestations of a non-domiciliary's purposeful activity in New

York occurs when he physically comes to this state, it is hardly dispositive of the jurisdictional question under § 302. N.Y. Civ.Prac.L. & R. § 302(a)(1) practice commentaries C302:9 (McKinney 1972). Physical presence is not a "talisman which will convert all affairs of business into a New York transaction." *Id.* at C302:10. Rather, it is necessary to look at all the specific facts before the court regarding defendant's visit. In reaching such a decision, the number and duration of the defendant's visit(s) to New York are critical factors. Moreover, the purpose of defendant's visit(s) to New York is also significant.

The Court first notes that in *Longines*, the defendant's representatives came to New York to negotiate *and* perform the original contract. In addition, these representatives also *executed* and *performed* a supplemental agreement in New York. 15 N.Y.2d at 455–56, 261 N.Y.S.2d at 17, 209 N.E.2d at 74. Clearly this activity far exceeds that of movants in this case.

In the leading case regarding presence under § 302, *Liquid Carriers*, a contract was executed and performed outside New York. However, defendant's vice-president visited New York on *several* occasions to negotiate the contract. One of these visits lasted *five* days. 375 F.2d at 952–53. Therefore, the court held that these visits were sufficient to satisfy the transacting business standard. *Id.* at 956.

In contrast, in *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 283 N.Y. S.2d 34, 229 N.E.2d 604 (1967), the court held that defendant's activities did not confer jurisdiction upon the court even though at least *three* representatives of the defendant had made *several* visits to New York, each lasting several hours. The court distinguished *Longines* by noting that there the defendant's representatives remained in New York for over *two months*. *Id.* at 382, 283 N.Y.S.2d at 38, 229 N.E.2d at 607.

A more recent case, *George Reiner & Co v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977), is notable be-

cause it holds that one visit to New York, lasting only a single day, may lead to a finding of a transaction of business. In *Schwartz*, an employer brought an action against a former salesman for breach of his employment agreement; and the agreement was negotiated *and executed* upon defendant's visit to New York.

Schwartz moved to dismiss the action on the ground that he was not transacting business in New York. The court held that since Schwartz was physically present in New York for a "day which included interviewing, negotiating *and* contracting—[resulting in] the purposeful creation of a continuing relationship with a New York corporation," jurisdiction was sustained. *Id.* at 653, 394 N.Y.S.2d at 848, 363 N.E.2d at 554 (emphasis added). In so holding, the court distinguished *Schwartz* from *McKee*, in that the one day visit of defendant's representative in *McKee* differed substantially with the New York visit of defendant Schwartz in "the nature and quality of the visits." *Id.* at 654, 394 N.Y.S.2d at 848, 363 N.E.2d at 555.

■ It should be apparent from reading the analysis of the aforementioned cases that precedents under § 302 are of limited value. This case, however, falls closer to the pole marked by *McKee*, rather than that represented by *Longines* and *Schwartz*. *See also Presidential Realty Corp. v. Michael Square West, Ltd.*, 44 N.Y.2d 672, 405 N.Y.S.2d 37, 376 N.E.2d 198 (1978) (fact that modification letter and agreement concerning terms of contract for sale of real estate were signed in New York was not sufficient to confer jurisdiction on non-resident defendants).[1] Therefore, the Court here finds that movant Nemetz's single trip to New York for a preliminary meeting with plaintiff and Mr.

Gates fails to satisfy the requirements under § 302.

It is not now necessary for this Court to reiterate the facts upon which this dispute arises. Instead the Court will only highlight the shortfalls in plaintiff's case: the purchase agreement of the limited partnership interest in BBR was executed in Massachusetts; the movants carry on all their business dealings within the state of Massac.usetts; all communications between Mr. Gates and the movants consisted of letters mailed by movants to Mr. Gates in Connecticut and Texas; the bulk of the arrangements leading up to the execution of the agreement were handled in Massachusetts.

The only hook upon which plaintiff can rest its claim for this Court's jurisdiction is movant Nemetz's alleged solitary trip to New York, and her alleged meeting with plaintiff and Mr. Gates upon the occasion of this visit. It is worthwhile to emphasize that Ms. Nemetz was the only representative of movants to attend this meeting. Furthermore, even construing the pleadings in favor of plaintiff, plaintiff's papers indicate that this meeting was merely preliminary.[2] It is clear to the Court that the discussions at the Hotel Carlyle were only exploratory; merely the first step in the solicitation process. Such a meeting does not upon these facts create a foundation for this Court's jurisdiction.

B. *Transfer to the United States District Court for the District of Massachusetts*

For the foregoing reasons, this Court lacks personal jurisdiction over the movants. Consequently, the next question before the Court is whether the interests of justice and judicial economy require trans-

---

1. The Court notes that plaintiff submitted a memorandum discussing § 302 only upon this Court's request. In that memorandum, plaintiff cites no case permitting a court to assume personal jurisdiction over movants upon facts such as are now before the Court. Movants completely failed to brief § 302 in their papers.

2. The Court notes that movants deny that any meeting—preliminary or otherwise—was held in New York prior to Mr. Gates' purchase of his partnership interest in BBR. Supplemental Affidavit of Zena Nemetz ¶ 2. Movants maintain that Ms. Nemetz met Mr. Gates in New York on two occasions *after* he became a partner in BBR. Both of these meetings were allegedly for social purposes. Affidavit of Zena Nemetz ¶ 6.

fer of this case pursuant to 28 U.S.C. § 1406(a), rather than its dismissal. *See Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *see also Corke v. Sameiet M.S. Song,* 572 F.2d 77 (2d Cir.1978); *Gaither v. Boone County Bd. of Educ.,* 465 F.Supp. 712 (S.D.N.Y. 1979). The Court concludes that it does.

First, transfer, rather than dismissal of this action, precludes any problems of timeliness which could be raised by dismissal. Second, transfer of this action to Massachusetts would also enable that Court to exercise personal jurisdiction over the named defendants, a factor of critical relevance. Accordingly, this action is hereby transferred to the United States District Court for the District of Massachusetts.

SO ORDERED.