**FUTURE WAYS, INC., Plaintiff,**

v.

**James T. ODIORNE as receiver for Commercial Standard Insurance Company, In Liquidation, Defendant.**

No. 88 Civ. 2969 (PKL).

United States District Court,
S.D. New York.

Nov. 1, 1988.

Kroll & Tract, New York City (Donald Joseph Cayea, of counsel), for plaintiff.

Stanley K. Shapiro, New York City, for defendant.

## ORDER AND OPINION

LEISURE, District Judge:

Future Ways, Inc. ("Future Ways") brought suit against the statutory liquidator, James T. Odiorne, of Commercial Standard Insurance Company ("CSIC"), an insolvent insurance company, seeking to recover on a $300,000 default judgment rendered against the San Angelo Foundry and Machine Company ("San Angelo Foundry"), an insured of CSIC.

In the underlying action, Denise D'Amore, the daughter of a Future Ways employee, commenced an action in the Supreme Court, Westchester County against, *inter alia,* Future Ways for personal injuries caused by a machine owned by Future Ways. Future Ways impleaded San Angelo Foundry, a Texas corporation which manufactured the rolling machines involved in the action. CSIC, also a Texas corporation, insured San Angelo at the time of the accident. On August 30, 1983, San Angelo Foundry filed a petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 701 *et seq.* (1986). On May 1, 1985, D'Amore recovered a default judgment in the Supreme Court, Westchester County, against San Angelo Foundry[1] in the amount of $300,-000. Affidavit of Stanley K. Shapiro, Esq., sworn to on August 1, 1988, Exhibit 4. Subsequently, INA/Aetna, Future Ways' insurer, received an assignment of this judgment against San Angelo Foundry from D'Amore. By this time, San Angelo Foundry was declared bankrupt. Plaintiff alleges that this judgment remains unpaid and demands judgment against CSIC as insurer of San Angelo Foundry, in the amount of the unpaid judgment pursuant to New York Insurance Law § 3420.

In the interim, CSIC had been placed in receivership. On January 24, 1985, the District Court of Travis County, Texas, issued a temporary injunction and appointed a temporary receiver for the assets of CSIC. Affidavit of Arnold Reyes, sworn to on July 8, 1988 ("Reyes Aff."), Exhibit A. CSIC, a Texas corporation, was declared insolvent and the Liquidator of the State Board of Insurance of Texas was appointed permanent receiver on October 4, 1985. Reyes Aff. ¶ 4. The permanent injunction order of the Texas court placed all affairs and assets of CSIC in the legal custody of the Receiver, and specifically enjoined any person from commencing or prosecuting

any action or asserting any claim against CSIC or the Receiver except in the receivership proceeding. Reyes Aff., Exhibit B. The receivership court established October 4, 1986, as the deadline for filing of proofs of claims against CSIC. Plaintiff failed to timely file a proof of its purported claim with the Receiver. Reyes Aff. ¶¶ 11, 13. Plaintiff filed this action on April 28, 1988, seeking to recover from CSIC on the unpaid judgment against San Angelo Foundry.

The case is presently before the Court on defendant's motion ·to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1), (2) and (6) or to stay the action subject to liquidation proceedings in the Texas Receivership Court.

## DISCUSSION

### Personal Jurisdiction

■ In deciding whether to dismiss plaintiff's complaint for lack of personal jurisdiction over the defendant, the plaintiff's pleadings are to be construed in the light most favorable to it. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). Although Future Ways ultimately bears the burden of establishing by a preponderance of the evidence this Court's jurisdiction over the defendant, *see Marine Midland Bank, N.A. v. Miller,* 644 F.2d 899, 904 (2d Cir.1981), given that no evidentiary hearing has been held, plaintiff at this juncture must merely make out a *prima facie* case of personal jurisdiction. *See Welinsky v. Resort of the World D.N.V.,* 839 F.2d 928, 930 (2d Cir.1988); *Cutco Industries, Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986).

Subject matter jurisdiction over the claim against CSIC is based on diversity of citizenship, 28 U.S.C. § 1332. Therefore, the issue of personal jurisdiction is determined by the law of the forum state, in this case New York.[2] *See, e.g., Arrowsmith v.*

---

1. The other defendants, including Future Ways, settled with D'Amore and the action against San Angelo was severed.

2. Plaintiff is misguided in basing its entire claim of jurisdiction on the allegation that the exercise

of such jurisdiction by this Court would comport with the Due Process Clause of the Fourteenth Amendment. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Memorandum") at 22–25. In order to exercise jurisdiction over a defend-

*United Press Int'l*, 320 F.2d 219, 223 (2d Cir.1963). New York Civil Practice Law and Rules ("CPLR") §§ 301 and 302 set forth the general bases upon which New York courts may assert jurisdiction over a non-resident foreign corporation. Additionally, New York Insurance Law § 1213 provides for jurisdiction over foreign insurance companies. Plaintiff has not made clear upon which of these statutes it bases its claim that this Court has jurisdiction over the defendant. Plaintiff's sole allegation is that CSIC "transacts business within the State of New York by virtue of its issuance of policies of insurance to persons, entities and/or corporations which do business within this State." Amended Complaint ¶ 2. Therefore, the Court will consider each statute individually, reading the plaintiff's pleadings in the light most favorable to it.

### State Bases

#### 1. CPLR § 301: "Doing Business"

■ Defendant, CSIC, alleges that it was not licensed in New York, did not maintain offices or sales agents in New York and did not issue policies to or collect premiums from, New York residents. Reyes Aff. ¶ 16. These allegations are not disputed by plaintiff. Future Ways merely makes the conclusory allegation that CSIC has sold insurance to entities doing business in New York. Amended Complaint ¶ 2. Plaintiff has not presented any evidence showing what entities, doing business in New York, if any, were insured by CSIC or what premiums, if any, CSIC received from these entities to support its allegation in the complaint. Plaintiff has

chosen not to request, or otherwise engage in, any discovery on these questions, and thus appears content to rest on the facts as submitted. Plaintiff's conclusory allegation fails to make out a *prima facie* case that CSIC is "doing business" in New York. Jurisdiction therefore, cannot be founded upon CPLR § 301.

#### 2. CPLR § 302: "Transacting Business"

■ The complaint alleges that CSIC transacts business in New York because it issues policies of insurance to entities which are doing business in New York. Amended Complaint ¶ 2. Future Ways argues that since CSIC, a Texas corporation, issued an insurance policy to San Angelo Foundry, a Texas corporation with its principal place of business in Texas, whose products entered the stream of commerce this Court can validly exercise *in personam* jurisdiction over defendant. Affidavit of Donald Joseph Cayea, Esq., sworn to September 1, 1988 ("Cayea Aff."), ¶ 7; Affidavit of Anthony J. Olson, sworn to on September 1, 1988 ("Olsen Aff."), ¶ 9. The issue to be determined is whether CSIC has "transacted business" in New York within the meaning of CPLR § 302(a)(1).

New York's long-arm statute, CPLR § 302(a)(1), gives the Court personal jurisdiction over any nondomiciliary who "transacts business within the state." The claim against the nondomiciliary must arise out of that business activity. *See McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981). "A nondomiciliary 'transacts business' under § 302(a)(1) when he 'purposefully avails

---

ant in a diversity suit this Court must employ a two-prong analysis. The first prong is a question of state law. Has the state provided for bringing the foreign corporation into its courts under the circumstances of the case presented? There is nothing to compel a state to exercise jurisdiction over a foreign corporation. If the state law provides for the exercise of jurisdiction, the second prong of the analysis comes into play. Does the exercise of jurisdiction pursuant to state law violate the Due Process Clause of the Fourteenth Amendment? *See, e.g., Arrowsmith v. United Press Int'l*, 320 F.2d 219 (2d Cir.1963). State law bases for jurisdiction are not necessarily coterminous with the outer

boundaries of the due process clause. For instance, New York's long-arm statute, CPLR § 302, does not extend jurisdiction as far as may be constitutionally permitted. *See, e.g., American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 435 (2d Cir. 1971); *Interface Biomedical Laboratories Corp. v. Axiom Medical, Inc.*, 600 F.Supp. 731, 734 n. 3 (E.D.N.Y.1985). Therefore, plaintiff must establish jurisdiction over the defendant pursuant to a valid New York state law, as well as establish that the exercise of such jurisdiction by this Court comports with the Due Process Clause of the Fourteenth Amendment.

[himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'" *Cutco Industries v. Naughton,* 806 F.2d at 365 (2d Cir.1986) (*see McKee Electric Co. v. Rauland–Borg Corp.,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 38, 229 N.E.2d 604, 607 (1967) (*quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 283 (1958)). No single contact or event connecting the defendant to New York is required; rather, the totality of the defendant's contact with the forum must indicate that the exercise of jurisdiction is proper. *See Sterling National Bank and Trust Co. of New York v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir.1975).

The issuance and delivery of an insurance policy outside New York, in and of itself, does not constitute "transaction of business" under CPLR § 302(a)(1) or Insurance Law § 1213. *See Farm Family Mutual Ins. Co. v. Nass,* 126 Misc.2d 329, 481 N.Y.S.2d 952 (Sup.Ct.1984), *aff'd* 121 A.D. 2d 498, 503 N.Y.S.2d 820 (2d Dep't 1986) (insurance company did not "transact business" in New York where the policy of insurance was not issued in New York, the insurance company was not authorized to do business in New York and had no offices or employees in New York, despite the designation of a New York claims adjuster to settle the personal injury suit). *See also Gibbs v. Hawaiian Eugenia Corp.,* 581 F.Supp. 1269 (S.D.N.Y.1984). *Cf. Birmingham Fire Ins. Co. v. KOA Fire & Marine Ins. Co.,* 572 F.Supp. 962 (S.D.N.Y.1983) (reinsurer does not "supply services" within New York under CPLR § 302(a)(1) by arranging for reinsurance through an underwriting pooling arrangement despite fact that some incidental benefits flow to insured parties in New York).

Applying these principles to the case at bar, it is clear that plaintiff has failed to make out a *prima facie* case of jurisdiction over CSIC. Plaintiff has failed to allege any purposeful activity on the part of the defendant by which it availed itself of the benefits and protections of this forum. Plaintiff merely asserts that the defendant knew that one of its insureds was engaged in "interstate commerce," Olsen Aff. ¶ 9,

and put products in the "stream of commerce." Cayae Aff. ¶ 7. There is not even an assertion that CSIC knew that San Angelo Foundry's products would enter New York. Nor is there any evidence of whether San Angelo Foundry was authorized to do business in New York, nor how many machines it sold to New York. In essence, plaintiff claims that since one machine produced by a Texas company that CSIC, another Texas corporation, insured wound up in New York, the defendant "transacts business" in New York. Such an expansive, almost boundless, notion of jurisdiction must be rejected because the party over whom jurisdiction is asserted in such a case will have in no way "purposely avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239. There is no claim that the defendant had any contact with New York or that it even knew that one of its insureds had products in or contacts with New York. Therefore, defendant has not "transacted business" in New York and jurisdiction cannot be based on CPLR § 302.

### 3. Insurance Law § 1213

New York Insurance Law § 1213 provides that any of certain enumerated acts, if done in New York by a foreign insurance company not authorized to do business in New York, is equivalent to and shall constitute an appointment by such company of the Superintendent of Insurance as its agent to accept service of process. The predicate acts for this special long-arm jurisdiction are: (1) the issuance or delivery of contracts of insurance to residents of New York or to corporations authorized to do business in this state; (2) the solicitation of applications for such contracts; (3) the collection of premiums, membership fees, assessments or other considerations for such contracts; or, (4) any other transaction of business. N.Y.Insurance Law § 1213(b)(1) (McKinney 1985).

Plaintiff has failed to allege any acts which would bring CSIC within the scope of this provision. Plaintiff has failed to

show that San Angelo Foundry was authorized to do business in New York. A foreign corporation is "authorized" to do business if it has authority under article 13 of the Business Corporations Law. N.Y.Bus. Corp. § 102 (McKinney 1986). Under article 13, a foreign corporation must fill out an application of authority which is then filed with the department of state. N.Y. Bus.Corp. §§ 1304, 1305 (McKinney 1986). At various points plaintiff alleges that San Angelo Foundry was engaged in "interstate commerce", Olsen Aff. ¶ 9, put products into "the stream of commerce", Cayea Aff. ¶ 7, and did not object to jurisdiction in the underlying action. Plaintiff's Memorandum at 23. None of these allegations are sufficient to demonstrate, even *prima facie*, that San Angelo was a corporation authorized to do business in New York. Furthermore, CSIC does not "transact[ ] any business" within the meaning of § 1213(b)(1)(D). Although there is a dearth of case law interpreting this provision it has been found analogous to the phrase "transacts any business" under CPLR § 302(a)(1). *See Farm Family Mutual Ins. Co. v. Nass*, 481 N.Y.S.2d at 954. Therefore, the preceding discussion finding that the defendant did not "transact[ ] any business" within the meaning of CPLR § 302(a)(1) applies here as well. Additionally, even if plaintiff could make a showing that CSIC falls within the scope of § 1213, it has failed to comply with the method of service provisions of this section. *See* N.Y. Insurance Law § 1213(b)(2) (McKinney 1985).

### The Due Process Clause

Finally, even if New York permitted jurisdiction in this instance the exercise of such jurisdiction would not pass constitutional muster. The exercise of jurisdiction in every case must comport with the Due Process Clause of the Fourteenth Amendment. " '[T]he constitutional touchstone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established 'minimum contacts' in the forum State.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105

S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The exercise of jurisdiction must comply with "our traditional conception of fair play and substantial justice." *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160. In this regard the minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239. "Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp.*, 421 U.S. at 475, 105 S.Ct. at 2183; *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (consumers' unilateral act of bringing a product into the forum state insufficient to establish the substantial connection between the forum and the defendant necessary for a finding of minimum contacts).

Whether or not simply placing a product into the stream of commerce is sufficient, in and of itself, to constitute an act of the defendant purposefully directed toward the forum State is not clear. *See Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). However even if no additional conduct is necessary the facts in this case do not meet the stream of commerce standard.

"The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is *aware* that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor will the litigation present a burden for which there is no corresponding benefit. A defendant who has placed goods in the stream of commerce benefits economically from the

retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity."

*Id.* at 117, 107 S.Ct. at 1035 (Brennan, J., concurring) (emphasis added).

In the present case, there is no evidence that San Angelo Foundry regularly sold products in New York nor that CSIC was aware that it sold any products in New York. The facts as presented by plaintiff seek to base jurisdiction on one, isolated occurence. This is plainly insufficient. *Cf. World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567 (distinguishing between an isolated occurrence and regular sales in the stream of commerce). At the very least the defendant must "deliver[ ] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* Future Ways has offered no evidence that CSIC had any expectation that San Angelo's products would be sold in New York nor that this was anything more than an isolated occurrence. The facts as submitted can not be sufficient to constitute minimum contacts as CSIC has in no way purposefully availed itself of the benefits of this forum.

Plaintiff's reliance on *McGee v. International Life Insurance Company,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), to illustrate that the exercise of jurisdiction in this instance would comport with notions of fair play and substantial justice is misplaced. In *McGee,* the foreign insurance company issued and delivered a life insurance policy to a resident of the forum state and collected premiums from the insured in the forum state; consequently, subjecting the insurer to personal jurisdiction in the state of the insured's residence. In the present case, CSIC had no contact with New York. Plaintiff seeks to recover based on a liability policy issued and delivered in Texas, to an insured domiciled and incorporated in Texas.

The Court holds that the plaintiff has failed to establish, *prima facie,* that this Court has personal jurisdiction over the defendant. Therefore it is unnecessary for the Court to address the defendant's alternative grounds for dismissal or its request for a stay.

## CONCLUSION

It is found on the facts submitted that the defendant corporation is not subject to personal jurisdiction in New York. Accordingly, defendant's motion to dismiss for lack of personal jurisdiction is granted.

SO ORDERED.